

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**07/09/2007**

| | | |
|---|---|---|
| IN RE: | § | |
| TODAY'S DESTINY, INC. | § | CASE NO: 05-90080 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| JOSEPH M. HILL | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3285 |
| | § | |
| MICHAEL DAY, *et al* | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION ON MOTIONS TO INTERVENE

On October 13, 2005, Today's Destiny, Inc. ("Debtor") filed a chapter 7 bankruptcy petition. Debtor was in the business of selling "predictive dialing equipment[1]". On March 21, 2006, the chapter 7 Trustee filed an adversary complaint against third parties alleging that the third parties acted as alter egos of Debtor to fraudulently convey or conceal assets belonging to Debtor and the bankruptcy estate. The Trustee alleged that Debtor was formed and operated by various individuals and did business through its affiliates, including The Next Generation, Medicus, IBD, and Straightway. A First Amended Complaint was filed on July 31, 2006.

On September 22, 2006, the Trustee filed a motion in the main bankruptcy case which was titled Trustee's Motion for Authority to Enter into Agreement to Prosecute Related Claims and Causes of Action. The Trustee also filed, in this adversary proceeding, a motion to amend the First Amended Complaint. Through the filing of these two motions, the Trustee sought to

---

[1] Predictive dialing equipment is designed to increase the efficiency of telemarketing by assuring that marketing agents are connected only to "live" persons rather than to unanswered phones, voice mail or answering machines. A number of parties have alleged that the debtors engaged in the fraudulent sale and leasing of this equipment. The debtor's principals deny these allegations.

1

enter into a joint prosecution agreement with non-debtor individuals (the "intervenors")[2] who wished to prosecute the same type of claims as the Trustee against the original defendants and, also, individual claims against proposed third party defendants.

The Court held a hearing on the motions on October 17, 2006. During the hearing, the Trustee withdrew the joint prosecution motion, the Court denied the Trustee's motion seeking leave to file a second amended complaint, and the Court entered a Case Management Order setting deadlines for parties seeking to intervene. The Court also ordered the complaint amended to include all claims to be asserted by the putative intervenors. Between December 27, 2006, and January 3, 2007, ten motions to intervene were filed with over 85 individuals seeking to intervene. The intervening parties stated that they intended to assert claims against the original defendants for fraud and deceptive trade practices and against the proposed third party defendants for fraud, deceptive trade practices, usury, declaratory judgments and rescission.

The Trustee's Second Amended Complaint was filed on January 31, 2007. The Second Amended Complaint added the proposed third party defendants. The third party defendants are financial institutions, other lenders, and leasing companies ("Lenders") who the intervenors allege to have been involved in Debtor's alleged fraud. The Complaint asserts that many of the customers who purchased Debtor's product would do so through financing agreements. Debtor would allegedly either direct purchasers to a third-party lender, which was represented as being related to Debtor, or would provide a leasing agreement with a third-party lender with whom Debtor had pre-arranged financing. The Plaintiffs alleged that Debtor and the Lenders conspired to create false and fraudulent lease agreements by which the Debtor sold and the Lenders financed the purchase of "illusory marketing equipment in the form of a grossly over-valued generic personal computer." 2nd Am. Cmpl. ¶ 68

---

[2] The Court will refer to all parties seeking to intervene as "intervenors."

After the Second Amended Complaint was filed, multiple defendants filed responses and objections to the motions to intervene.  A hearing was held on the motions to intervene on April 13, 2007.  At the hearing, the Court ordered briefing on two issues: (1) the effect of disputed ownership of claims on motions to intervene when the motions to intervene are based on permissive intervention; and (2) the impact of 11 U.S.C. § 726(a)(3), which allows that holders of tardily filed claims receive distributions in a chapter 7 bankruptcy case (assuming that there are adequate funds), on intervention of claimants who have not yet filed proofs of claim in this adversary.  The Court also ordered a chart to be filed which lists each intervenor currently involved in state court litigation on these same claims, their respective Lender, and the status of such proceedings.

*Subject Matter Jurisdiction*

As a threshold matter, the Court must determine whether the Court has subject matter jurisdiction over each claim asserted by each putative intervenor against each defendant. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 509 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  This Court does not have supplemental subject matter jurisdiction over pendent claims under 28 U.S.C. § 1367. *In re Walker*, 51 F.3d 562, 570-71 (5th Cir. 1995).  The sole source of the Court's subject matter jurisdiction is 28 U.S.C. § 1334.  Accordingly, even if a putative intervenor has claims that are factually intertwined with the matters asserted by the estate, the Court may not allow the intervention unless the intervenor's claim falls within the jurisdictional grant of 28 U.S.C. § 1334.  The Court's independent basis of jurisdiction over the intervenors' claims is examined in detail below.

*Permissive Intervention: Rule 7024(b)*

Federal Rule of Bankruptcy Procedure 7024(b) provides that intervention may be permitted "when an applicant's claim or defense and the main action have a question of law or fact in common."  FED. R. BANKR. P. 7024(b)(2).  This is the fundamental requirement for allowing permissive intervention.  *Newby v. Enron Corp*, 443 F.3d 416, 421 (5th Cir. 2006) (citing *Howse v. S/V "Canada Goose I",* 641 F.2d 317, 322 (5th Cir.1981)).  While the decision to permit intervention is discretionary with the Court, the determination of the commonality of the intervenor's claim and the claims in the main case is not discretionary, but rather a question of law.  *Newby*, 443 F.3d at 421 (citing *Stallworth v. Monsanto Co.,* 558 F.2d 257, 269 (5th Cir.1977)).  Generally, the "'claim or defense' portion of Rule 24(b)(2) has been construed liberally."  *Newby*, 443 F.3d at 422-23 (citing *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975)).  If the court determines that there are common claims or defenses, the court shall, in exercising its discretion "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  FED. R. BANKR. P. 7024.

The rule of intervention is "not intended to allow the creation of whole new lawsuits by the intervenors," but rather "is intended to prevent multiple lawsuits where common questions of law or fact are involved."  *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994) (citing *Washington Elec. Coop v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92 (2nd Cir. 1990)).  For a party to permissively intervene, it is well-settled that "a party must have 'independent jurisdictional grounds.'"  *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) (citing *Hunt Tool v. Moore Inc.,* 212 F.2d 685, 688 (5th Cir. 1954)).

The parties seeking to intervene argue that the claims of the intervenors and the estate are almost identical and allowing the parties to intervene will "enhance judicial economy and

4

eliminate the "prospect of inconsistent adjudication of [multiple] cases." *E.g.* docket no.'s 61 & 62 ¶ 5.

The defendants object, however, arguing that the complaint and allegations are inadequate to support intervention. Additionally, the defendants assert that (1) the parties seeking to intervene have not properly complied with Rule 7024(c); (2) the parties lack commonality of claims or defenses; (3) the parties have failed to plead and prove an independent ground of jurisdiction; and (4) the parties are already engaged in state court litigation.

The Court will first address the adequacy of the complaint and each of the defendants' objections. The Court will then examine the ownership of the claims asserted in the complaint.

*Adequacy of the Complaint*

As to the sufficiency of the complaint, the defendants allege the following: the motions to intervene lack specific allegations, the motions lack allegations that the intervenors have a cause of action belonging to the estate or involving a generalized injury to the estate which will ultimately affect all creditors,[3] the Trustee lacks standing to bring the individualized claims for the intervenors, and there is no need for two parties (intervenors and the Trustee) to seek relief for the same alleged fraudulent scheme.

A scheduling conference was held on March 16, 2007. Subsequent to the conference the Court entered a case management order (docket no. 232) setting deadlines for filing responses to motions to intervene, answers to the second amended complaint, Rule 7012(b) motions and motions to abstain. The Court specifically stated at the March 2007 hearing that it would first consider motions to intervene before making determinations on any other motions. Therefore, in this memorandum opinion and order, the Court will consider the sufficiency of the Second

---

[3] Defendants argue that the claims brought are individual and therefore are appropriate to be brought individually, not by the Trustee. *See Shimmelpennick v. Byrne*, 183 F.3d 347 (5th Cir. 1999).

Amended Complaint only as it relates to intervention and compliance with Rule 7024(b) and (c).

*Specific Objections to Intervention*

*1. Compliance with Rule 7024(c)*

Federal Rule of Bankruptcy Procedure 7024(c) provides the following procedure for parties seeking to intervene:

> A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5.  The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. . .

FED. R. BANKR. P. 7024(c).  In their motions to intervene, the intervenors either provided a brief statement of their claims or they simply stated they were adopting the Trustee's Second Amended Complaint.  The motions to intervene were not accompanied by a separate pleading.  The defendants, therefore, object asserting the motions are insufficient to meet the requirements of Rule 7024(c).

The Fifth Circuit, however, has allowed parties to intervene even when the motions do not technically comply with Rule 7024(c).  *Farina v. Mission Inv. Trust*, 615 F.2d 1068, 1075 (5th Cir. 1980) (stating, in dicta, "[a]though FDIC did not formally file a motion to intervene, as specified in Rule 24(c), it was within the discretion of the District Court to treat the motion to remove as also a motion to intervene, both of which were granted by the Court in its obvious acceptance of FDIC as a party in the suit.");  *See also Armstrong v. Capshaw, Goss & Bowers, LLP,* 404 F.3d 933, 936 (5th Cir. 2005) (treating a party's motion for leave to amend his complaint in intervention, which sought to justify party's status as an intervenor in federal court, as a motion for leave to intervene.).

The Sixth Circuit has found it an abuse of discretion for a district court to deny a party's motion to intervene on the basis that it failed to attach a pleading.  *Providence Baptist Church v.*

6

*Hillandale Comm*, 425 F.3d 309, 314-15 (6th Cir. 2005).  The Court in *Providence Baptist* stated that the motion to intervene "alleged a claim or defense with a common question of law and fact as in the main action" and that "the parties are clearly on notice as to [the party seeking intervention's] position and argument."  *Id.* at 314.

The Second Amended Complaint sets forth twelve causes of action divided into three categories: (1) claims for the direct harm to the estate;[4] (2) claims for generalized harm to the creditors;[5] and (3) claims for both, harm to the estate and for the generalized harm to the creditors.[6]  In incorporating the intervenors into the Complaint, the Complaint contains an appendix listing the name of each putative intervenor and the corresponding name of the Lender which participated in the alleged defrauding of that individual intervenor.  There are 97 individuals listed.  While this Complaint is vague as to which intervenor is asserting what claims, the Court finds that the Complaint combined with the brief statements of claims to be asserted in the motions to intervene is sufficient to comply with Rule 7024(c) as interpreted by the Fifth Circuit.

As evident by the numerous responses filed to the motions to intervene, the parties objecting to the interventions clearly had notice of the intervening parties' intent and had notice that the parties were planning on adopting some of the causes of action asserted in the Trustee's Second Amended Complaint.  In addition, the Court entered a case management order on October 17, 2006, and has held numerous hearings regarding the motions to intervene.  The

---

[4] These include claims for legal malpractice and breach of fiduciary duty against Terry Vanderpool.

[5] These include claims for rescission, violation of the Texas Deceptive Trade Practices – Consumer Protection Act, and a request for declaratory judgment regarding the unenforceability of acceleration clauses in the "leases" and the true characterization of the "leases."

[6] These claims include breach of fiduciary duties, aiding and abetting breach of fiduciary duties, certain Defendants' liability as alter egos or for sham to perpetrate a fraud, fraud and fraudulent inducement, conspiracy to defraud and to breach fiduciary duties, denuding the corporation and conspiracy to denude the corporation, contribution, and various additional claims against Sterling National Bank

objecting parties cannot now claim they lack notice of the intervenor's intent.  Accordingly, the Court finds that the intervenors' failures to comply with the technical requirements of Rule 7024(c) are not fatal to their attempts to intervene.[7]

*2. Commonality of Claims or Defenses*

The objecting defendants argue that the claims and defenses are not common among the parties.  Specifically, the objecting defendants argue that since the intervenors' claims involve the DTPA and fraud, there will be specific and unique allegations, such as different false representations made by different Lenders, related to each intervenor.  The objecting parties recognize there may be similar questions of law, but assert that these questions will involve the application of separate and distinct facts for each claim.  Courts are to construe the requirement of common claims or defenses very "liberally."  *Newby*, 443 F.3d at 422-23 (citing *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975)).  "If there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention." 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1911 (3d ed. 2007).

The Court finds that it is indisputable that common questions of law and fact exist among these proceedings.  The harms asserted by the Trustee on behalf of the estate and the harms asserted by the intervenors involve the same allegedly fraudulent conduct which operated similarly for all parties involved.  The same conduct and alleged breaches of duty which allegedly harmed the estate, allegedly harmed the individual creditors.  In light of the consideration that the commonality of claims and defenses should be "liberally construed," the

---

[7] The Court recognizes that it has once denied Shelton Chiropractic Corporation and Timothy J. Shelton's motion to intervene for procedural deficiencies.  Shelton's motion, however, is distinguishable from the ones considered before the court today.  The Shelton motion to intervene was fatally flawed in that the parties failed to provide proof of any service and the motion was filed in the main bankruptcy proceeding (05-90080) rather than in this adversary proceeding.

Court finds the intervenors clearly meet such requirement.

*3. Independent Basis for Jurisdiction*

The parties opposed to the interventions also assert that the intervenors have no independent basis for jurisdiction in this adversary proceeding.  *See e.g. Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985); *U.S. v. Union Elec. Co.*, 64 F.3d 1152, 1170 n.9 (8th Cir. 1995).  The Court, however, disagrees and finds the suits brought by the intervenors are "related to" the bankruptcy as intended under 28 U.S.C. § 1334.

Congress conferred authority to bankruptcy judges through two sections of title 28 of the United States Code: (1) § 1334 which grants subject matter jurisdiction in cases under or related to title 11 to the district courts; and (2) § 157 which allows district courts to transfer cases under title 11 or related to cases under title 11 to bankruptcy courts. 28 U.S.C. § 1334(a); 28 U.S.C § 157(a).

Under § 1334(a) district courts have original and exclusive jurisdiction in cases brought under title 11.  28 U.S.C. § 1334(a).  District courts also have "original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in or related to* cases under title 11."  28 U.S.C. § 1334(b) (emphasis added).

The Supreme Court has noted "related to" bankruptcy proceedings include "(1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir. 2001) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995)). The Fifth Circuit has stated that a matter is related to a case under title 11 if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Wood*, 825 F.2d at 93 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.

9

1984)).  Even when there is a possibility a suit may ultimately have no effect on the estate, this possibility is not enough to conclude there would be no *conceivable* effect.  *Id.*  "Certainty or even likelihood of such an effect is not a requirement." *Arnold*, 278 F.3d at 434 (citing *In re Canion*, 196 F.3d 579, 858 (5th Cir. 1999)).  The "plaintiffs' claims, however, must affect the estate, not just the debtor." *Wood*, 825 F.2d at 93 (citing *In re Cemetery Dev. Corp.*, 59 B.R. 115, 121, n.13 (Bankr. M.D. La. 1986)).

Once the court has determined a suit is "related to" title 11, subject matter jurisdiction vests with the district courts.  Bankruptcy judges then have authority by reference under 28 U.S.C. § 157.

The Court finds that the intervenors' suits are "related to" the bankruptcy proceeding in that the outcome of the suits may have a conceivable effect on the estate.  The Texas Civil Practice and Remedies Code § 33.004 provides that "[a] defendant may seek to designate a person as a responsible third party . . ." CIV. PRAC. & REM. CODE § 33.004(a).  This designation, however, "(1) does not by itself impose liability on the person; and (2) may not be used in any other proceeding, on the basis of res judicata, collateral estoppel, or any other legal theory, to impose liability on the person." CIV. PRAC. & REM. CODE § 33.004(i).

Applying § 33.004 to this case, the Court finds that the Debtor could theoretically be held a responsible party, but not be liable for damages.

If the Debtor is brought in as a defendant, § 33.013 provides that:

(a) Except as provided in Subsection (b), a liable defendant is liable to a claimant only for the percentage of the damages found by the trier of fact equal to that defendant's percentage of responsibility with respect to the personal injury, property damages, death, or other harm for which the damages are allowed.

(b) Notwithstanding Subsection (a), each liable defendant is, in addition to his liability under Subsection (a), jointly and severally liable for the damage recoverable by the claimant under Section 33.012  with respect to a cause of action if:

10

> (1) the percentage of responsibility attributed to the defendant with respect to a cause
> of action is greater than 50 percent
>
> . . .

TEX. CIV. PRAC. & REM. CODE § 33.013.  Section 33.015 provides for a right of contribution

among defendants who are jointly and severally liable.  *Id.* at § 33.015.[8]

In this proceeding, the parties are complaining of fraud against the Lenders in

participation of a scheme allegedly orchestrated by the Debtor, its insiders and alter egos.  Based

on Chapter 33 of the Texas Civil Practice and Remedies Code, should any Lender in this

proceeding be found liable for fraud, the Lenders will have the opportunity to show that the

Debtor was partially responsible.  The Lenders, therefore, may be able to obtain an allocation of

a proportionate amount of fault to Debtor.  *See Werner v. KPMG LLP*, 415 F. Supp. 2d 688, 703

(S.D. Tex. 2006) (citing *Sw. Bank. v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 111 (Tex.

2004)) ("Texas courts apply Chapter 33 to fraud claims . . . ");  *JCW Elecs., Inc. v. Garza*, 176

S.W. 3d 618, 626 (Tex. App.-Corpus Christi 2005, reh'g overruled) ("Because fraud is a claim

based on tort, Chapter 33 applies.").

For the parties who have filed proofs of claim, if the intervenors were to prevail in their

suits against the Lenders, the intervenors' allowed claims against the bankruptcy estate could be

concomitantly reduced.  *See e.g.  Tompkins v. Cyr*, 202 F.3d 770, 785 (5th Cir. 2000) (citing

---

[8] Proportionate responsibility has been explained as:

> [T]he trier of fact must determine the percentage of responsibility, stated in whole numbers, for
> certain specified persons with respect to each person's causing or contributing to cause in any way
> the harm for which recovery of damages is sought . . .  The following persons are specified: (1)
> each claimant; (2) each defendant; (3) each settling person; and (4) each responsible third party
> who has been joined under the act. CIV PRAC. & REM. CODE §§ 33.003, 33.004.  If injuries cannot
> be apportioned with reasonable certainty, the injuries are indivisible, and the defendants are
> jointly and severally liable for the whole.  *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644
> (Tex. 1996).

53 TEX. JUR. 3d *Negligence* § 71 (2007).

*Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991) ("Under Texas law, plaintiffs are not entitled to more than one recovery for the same injury.")).  The reduction in the allowed claims may occur regardless of whether the Debtor was actually found liable for damages or if the Debtor was merely allocated fault as a responsible third party, but never actually held liable for damages.  In either situation, the Trustee would have the right to object to a portion of the intervenors' proofs of claim on the basis of the allowance of only one recovery for the same injury (assuming the Lender had paid its proportionate liability).  *Id.* (citing *Stewart Title Guar. Co.*, 822 S.W.2d at 7).

Additionally, if fault is attributed to the Debtor, the Lenders may have claims to file against the estate for contribution.  The Lenders' claims, however, could be classified differently than the intervenors.  The intervenors appear as unsecured creditors.  The Lenders, however, due to their participation in the fraudulent conduct—which would have been determined by this hypothetical future stage in the bankruptcy—could be subject to the doctrine of equitable subordination.

Under § 510(c), the Court has the authority to subordinate claims of creditors on the principle of equitable subordination.  11 U.S.C. § 510(c).  The Fifth Circuit has stated that equitable subordination is appropriate in three general categories of cases: "(1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors."  *In re U.S. Abatement Corp.*, 39 F.3d 556, 560 (5th Cir. 1994) (citing *Holt v. FDIC (In re CTS Truss, Inc.),* 868 F.2d 146, 148-49 (5th Cir.1989)).  The Lenders would (hypothetically) fall into the third category.  Accordingly, the distribution of the estate will depend on the liability of the Lenders and the amount of contribution the Lenders may seek from

the Debtor.

Even if the intervenors have not filed proofs of claim in the bankruptcy estate, the distribution of the estate will conceivably be affected. If the Lenders are liable for fraud and they are successful in attributing a certain amount of the conduct to the Debtor, the Lenders may seek contribution from the estate. In addition, § 726(a)(3) specifically allows for the payment of tardily filed proofs of claim in chapter 7 proceedings. Intervenors who have not filed proofs of claim, may, after fault was allocated to Debtor, later file proofs of claim.

While there are many different outcomes that may result from this litigation, the net effect is that there may be a conceivable effect on the estate. Accordingly, the Court has "related to" jurisdiction of the intervenors' claims. *See Wood,* 825 F.2d at 93. An independent basis of jurisdiction exists.

*4. Pending State Court Litigation and Settlement*

The parties objecting to the requested interventions argue that because many of the putative intervenors are already involved in state court litigation, such parties' interests are already adequately protected. The Court finds this argument is inapplicable to considering the allowance of permissive intervention. However, the Court does find that the pending state court litigation may have an effect on the intervenors' independent basis of jurisdiction in this proceeding.

Whether a party's interest are "adequately protected" is generally considered in evaluating intervention of right under 7024(a). Specifically stated under 7024(a), courts are to consider whether "the applicant's interest is adequately represented by existing parties." 11 U.S.C. § 7024(a)(2). Courts hold that intervention "is not appropriate where the applicant can protect its interest and/or recover on its claim through some other means." *Newby v. Enron*

13

*Corp.*, 443 F.3d 416, 422 (5th Cir. 20006) (quoting *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994)).

The objecting party in *Newby* argued, *inter alia,* the putative intervenor should not be allowed to permissively intervene because the applicants had "other means of obtaining the information they seek." *Id.* (party was seeking intervention to gain access to discovery). The Court rejected the objecting party's argument and distinguished this principle from that required for permissive intervention. *Id.* at 422-23 ("[Rule 24(a)(2)], unlike Rule 24(b)(2), makes an applicant's ability to protect his interests a criteria for intervention."). Therefore, as to a consideration of permissive intervention, this Court finds the objecting parties' argument to be without merit.[9] This argument, however, does have merit as to a consideration of the impact of this litigation on the estate. If parties have settled, the Court must reconsider the existence of the parties' independent basis of jurisdiction.

The parties have filed a list of state court litigation involving the intervenors and the stage at which the litigation is currently pending. Based on the responses filed, there are 81 parties currently seeking intervention involved in state court litigation. Of these eighty-one applicants, apparently thirty-two have settled or are settling and two are involved in proceedings in which a judgment has been entered.

As stated above, this Court has jurisdiction over these proceedings if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Wood*, 825 F.2d at 93 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). When a party enters into a settlement agreement, the parties will be bound by the settlement and will not be allowed to relitigate issues resolved by the settlement. *In re Gibraltar Res., Inc.*, 210 F.3d

---

[9] The Court notes, however, that the pending state court litigation may be of importance in later consideration of the parties' motions to abstain.

573, 576-77 (5th Cir. 2000). Therefore, if the putative intervenors and their respective Lenders enter into settlements, the putative intervenors may not then appear before this bankruptcy court and assert the same settled issues against the Lenders.  There no longer is a case or controversy.

Accordingly, while the Court finds that pending state court litigation is not a weighty factor in a consideration of permissive intervention, if the state court suits have settled the suits are no longer "related to" the bankruptcy proceeding.

*Claim Ownership*

As to the ownership of claims, at least one Lender has asserted that several of the claims brought by the Trustee in his Second Amended Complaint actually belong to the intervenors. Therefore, the Lender argues that the Trustee was improper in initiating this adversary proceeding and, accordingly, the adversary proceeding must necessarily be dismissed.  The Lender then takes a further step and argues that "in this regard, the putative interveners as, owners of the claims, cannot have any interest in the Adversary Action; and, therefore, there could not be any factual or legal questions in common."  Eastern Funding Post-Hearing Brief at ¶ 3.  Another Lender asserts a similar argument, but also asserts that because the Trustee is the improper party to assert some of the claims, the interventions will create entirely new lawsuits, which is not the purpose or intended effect of allowing intervention.  Bankers Healthcare Group Post-Hearing Brief ¶ 21. Most of the other Lenders assert substantially similar arguments.

The Court finds that the Lenders are correct in their assertions that the Trustee has brought claims which do not belong to the estate, but incorrect in their conclusion as to the effect of the improper assertion.

Under the Court's case management order entered on October 17, 2006, the plaintiffs were instructed to amend their complaint to include all claims asserted by any putative

intervenors.   A Second Amended Complaint was filed on January 31, 2007.   The Second Amended Complaint, while sufficient to meet the requirements of Rule 7024(c),[10] fails to meet the requirements of the Court's October 17, 2006 case management order and does improperly state the ownership of certain claims.

The intervening parties stated in their motions to intervene that they intended to assert claims against the original defendants for fraud and deceptive trade practices and against the Lenders for fraud, deceptive trade practices, usury, declaratory judgments and for rescission. The Second Amended Complaint does not include several of these claims.   There is no claim against the original defendants for violations of the DTPA nor is there a claim for fraud or usury asserted against the Lenders.    In addition, as stated above,[11] the claims in the Second Amended Complaint are asserted under one of three categories: (1) claims for direct harm to the estate; (2) claims for the generalized harm of the estate's creditors; and (3) claims for both harm to the estate and for the generalized harm of the estate's creditors.   All of these categories are characterized as being "direct claims owned by Today's Destiny bankruptcy estate."   The Court finds, however, that several of these claims do not belong to the estate, but rather, belong only to the putative intervenors.

In the Fifth Circuit, the guiding case for a determination of claim ownership is *In re Schimmelpenninck*, 183 F.3d 347 (5th Cir. 1999).  *Schimmelpenninck* divided possible causes of action into three categories to aid in a determination of "whether the trustee or an individual creditor" is the appropriate party to assert the claim.  *Schimmelpenninck*, 183 F.3d at 359-60.

---

[10] *See* supra p. 6-8

[11] *See* supra p. 7

The categories are:

1) Actions by the estate that belong to the estate;

2) Actions by individual creditors asserting a generalized injury to the debtor's estate, which ultimately affects all creditors; and

3) Actions by individual creditors that affect only that creditor personally.

*Id.* at 360.  The Court found "[t]he trustee is the proper party to advance the first two of these kinds of claims, and the creditor is the proper party to advance the third."  *Id.*  "[E]ven if a claim 'belongs to' the creditor, the trustee is the proper party to assert the claim for the benefit of all creditors, provided the claim advances a generalized grievance."  *Id.* at 359.

Previous to *Schimmelpenninck*, the Fifth Circuit provided guidance as to what constitutes actions that should be property of the estate.  *In re Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994).  Under *Educators Trust*, whether a claim is property of the estate depends on "whether under applicable state law the debtor could have raised the claim as of the commencement of the case."  *Id* at 1281.  "If a cause of action alleges only indirect harm to a creditor (i.e. an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate."  *Educators Trust*, 25 F.3d at 1284.  The Court is to examine the nature of the injury for which relief is sought, and, if the Court finds that the debtor could have raised a claim for its direct injury, "then the cause of action belongs to the estate."  *Id.* (citing *In re E.F. Hutton Sw Props. II, Ltd.,* 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989)*;  In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153-54 (5th Cir. 1987)).

The claims for fraud in this proceeding are based on the allegedly fraudulent leasing agreements with the Lenders.  The fraud allegations are based on the Trustee's assertions that

Debtor's insiders[12] induced the creditors to enter into the alleged fraudulent schemes involving the Lenders, Debtor and Debtor's alter egos.  Based on the alleged scheme, the Trustee asserts that "Today's Destiny . . . made millions of dollars a year based on hundreds of sales."  Sec. Am. Cmpl. at ¶ 66.

These schemes, as alleged, caused harm to the intervening parties.  The Debtor, itself, did not suffer any direct damages from this alleged fraud—only the creditors of the estate.  These claims of fraud, therefore, do not belong to the estate.

As for the DTPA claims, Chapter 17 of the Texas Business and Commerce Code, the Texas Deceptive Trade Practices Act, is to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." *PPG Indus, Inc. v. JMB/Houston Ctr. Partners*, 146 S.W.3d 79, 84 (Tex. 2004) (citing TEX. BUS. & COM. CODE § 17.44(a)).  The DTPA is limited specifically to consumers, meaning one "who seeks or acquires by purchase or lease, any goods or services."  *Id.* at 85 (citing TEX. BUS. & COM. CODE § 17.45(4)).   These claims are specific to the intervenors.   Indeed, in determining that DTPA claims are not assignable, the Texas Supreme Court has stated that:

> One purpose of the DTPA's treble damages provisions is to encourage privately initiated consumer litigation, reducing the need for public enforcement.  The legislative intent was to encourage aggrieved consumers to seek redress and to deter unscrupulous sellers who engage in deceptive trade practices. TEX. BUS. & COMM. CODE § 17.44(a).

*Id.* at 85 – 86 (citations omitted).  DTPA claims do not belong to the estate.

The Second Amended Complaint is, therefore, flawed.  On this issue, the Lenders are

---

[12] The direct claims for fraud and fraudulent inducement are asserted against the defendants that the Trustee characterizes as insiders.  The "insiders" include the following: Michael Day, president, chief executive officer and chairman of the board; Max K. Day, senior vice president and chief operating officer; Max O. Day, vice president; Chaz Robertson, vice president of sales; Joshua Smith, vice president of operations; Jared Day, the "closer" in the sales department and; Terry Vanderpool, General Counsel.

correct.  However, the Court finds that the Lenders are incorrect as to their argument that these flaws negate the commonality of claims or defenses among the parties.  The harms asserted by the Trustee and by the putative intervenors all involve the same alleged fraudulent conduct.  As set forth above, this is sufficient to meet the "liberally construed" requirement of commonality of claims or defenses in Rule 7024(b).[13]  *See Newby*, 443 F.3d at 422-23 (citing *In re Estelle*, 516 at 485).  The fact that the Trustee may own some claims and the intervenors may own others does not affect the commonality of the claims or defenses.  The Court will not deny intervention on the basis that the complaint may need to be repled to properly assert ownership of certain claims.

*Conclusion*

The Court finds that based on the requirement to "liberally construe" the commonality of claims or defenses to be asserted by putative intervenors in determining permissive intervention, all parties have met this requirement.  However, for parties who have already settled their suits against the Lenders, the Court finds intervention of these parties as to the Lenders will have no effect on the estate.  The Court finds these specific parties do not have an independent basis of jurisdiction to participate in this proceeding.  The claims the intervenors wish to assert against the non-Lender defendants, however, may have an effect on the estate.

To clarify the claims on which the putative intervenors may intervene, the Court has attached three exhibits to this Memorandum Opinion.  Exhibit "A" is a chart setting forth the proper ownership of the claims, as they have currently been pled.  In determining ownership of claims, the Court has not considered (i) whether the claims, as stated, are sufficient under either Federal Rules of Civil Procedure 8 or 9; or (ii) whether the trustee and intervenors should be allowed to plead an alternative set of facts that would change the ownership chart.  Those matters will be considered when properly pled.   Exhibit "B" is a chart setting forth the parties that the

---

[13] *See* supra p. 8

Court understands to have settled or to be in the process of settling claims.  Exhibit "C" is a list of all parties the Court understands to be seeking intervention.  A separate order has issued setting forth a procedure for any party to request reconsideration of the Court's findings as set forth in Exhibits A, B, or C.  If a settlement has been finalized those parties will not be allowed to intervene as to the Lenders.  As to all other parties, intervention is allowed.

     Signed at Houston, Texas, on July 6, 2007.

MARVIN ISGUR
United States Bankruptcy Judge

## Exhibit A

## CLAIMS OWNERSHIP

| Cause of Action | Paragraphs of Complaint | Defendant(s) | Owner of Claim |
|---|---|---|---|
| Breach of Fiduciary Duties | ¶¶ 95-102; ¶¶ 104-105 | Michael Day, Max K. Day, Max O. Day, Chaz Robertson, Joshua Smith, and Terry Vanderpool | Trustee |
| Breach of Fiduciary Duties | ¶¶ 103-104[14] | Michael Day, Max K. Day, Max O. Day, Chaz Robertson, Joshua Smith, and Terry Vanderpool | Intervenors |
| Aiding and Abetting Breach of Fiduciary Duties | ¶¶ 106-115 | Jared Day and the Lenders | Trustee, but only to the extent that claims based on wrongful conduct are allowed against the estate and in favor of individual creditors. |
| Aiding and Abetting Breach of Fiduciary Duties | ¶¶ 106-115 | Jared Day and the Lenders | Intervenors, but only to the extent that the individual intervenors were injured. |
| Defendants' Liability as Alter Egos or for Sham to Perpetrate a Fraud | ¶¶ 116-123 | Michael Day, Max K. Day, Max O. Day, Medicus Marketing, IDB, and Joshua Smith | Trustee |
| Fraud and Fraudulent Inducement | ¶¶ 124-135 | Max K. Day, Michael Day, Max O. Day, Chaz Robertson, Jared Day, Joshua Smith, and Terry Vanderpool | Intervenors |
| Conspiracy to Defraud and to Breach Fiduciary Duties Conspiracy to Defraud Conspiracy to Breach Fiduciary Duties | ¶¶ 136-144 | Michael Day, Max O. Day, Max K. Day, Chaz Robertson, Joshua Smith, Terry Vanderpool, and the Lenders | Intervenors |
| Denuding the Corporation and Conspiracy to Denude the Corporation | ¶¶ 145-153 | Michael Day, Max K. Day, and Max O. Day | Trustee |
| Legal Malpractice and Breach of Fiduciary Duties | ¶¶ 154-161 | Terry Vanderpool | Trustee |
| Contribution | ¶¶ 162-166 | Lenders | Trustee |
| Rescission | ¶¶ 167-170 | Lenders | Intervenors |
| Violations of the Texas Deceptive Trade Practices - Consumer Protection Act | ¶¶ 171-183 | Lenders | Intervenors |

[14] The cause of action in ¶ 103 is not owned by the trustee. The cause of action in ¶ 104 includes claims by the trustee and by the creditors. The complaint does not even attempt to set forth a colorable claim by the creditors in either ¶ 103 or ¶ 104. Nevertheless, the Court is only considering ownership of claims and not whether a claim has properly been stated.

| | | | |
|---|---|---|---|
| Additional Claims Against Sterling National Bank Aiding and Abetting Breach of Fiduciary Duties and Fraud | ¶¶ 184-196 | Sterling National Bank | Intervenors, except as set forth in ¶ 192. |
| Additional Claims Against Sterling National Bank Aiding and Abetting Breach of Fiduciary Duties and Fraud | ¶¶ 184-196 | Sterling National Bank | Trustee, but only to the extent asserted in ¶ 192. |
| Request for Declaratory Judgment | ¶¶ 197-206 | Lenders | Intervenors |
| **Claims not asserted in the Trustee's Second Amended Complaint, but indicated to be asserted by the intervenors.** | | | |
| Fraud | n/a | Lenders | Intervenors |
| Violations of the Texas Deceptive Trade Practices - Consumer Protection Act | n/a | "Original Defendants" | Intervenors |

## Exhibit B

**PROPOSED INTERVENTIONS THAT HAVE SETTLED
OR HAVE PENDING SETTLEMENTS**

| Intervenor | Finance Company |
|---|---|
| Baron, Paul | Sterling National Bank |
| Boland, Matthew | Sterling National Bank |
| Bower, Brandt | Sterling National Bank |
| Bridenstine, Kelly | Greater Bay Capitol |
| Bushman, Dennis | Sterling National Bank |
| Cavaciuti, Eric | Financial Pacific Leasing |
| Charpentier, Dan | Greater Bay Capitol |
| Choi, Eric | Sterling National Bank |
| DiBella, Kevin | Sterling National Bank |
| Friedman, Greg | Sterling National Bank |
| Gappa, Jeffrey | Sterling National Bank |
| Ghariban, Derick | Greater Bay Capitol |
| Hart, Walter Joseph | Sterling National Bank |
| Haskin, Gregory | Sterling National Bank |
| Henriksen, Duane | Sterling National Bank |
| Ho, Jeffrey | Sterling National Bank |
| James, Det | Sterling National Bank |
| Jex, Kevin* | Greater Bay Capitol |
| Le, Kevin | Sterling National Bank |
| Lee, Stephen | Sterling National Bank |
| Mittag, Harland & Krauss d/b/a Crossroads Chiropractic | Eastern Funding |
| Podjowski, Paul | Sterling National Bank |
| Rawlings, Lance | Sterling National Bank |
| Richards, Susan; Sampson, David & Donahue, Thomas | Sterling National Bank |
| Roessler, Micheal | Sterling National Bank |
| Shelby, Scott | Sterling National Bank |
| Taylor, Micheal | Sterling National Bank |
| Thomas, William | Sterling National Bank |
| Thurman, Michael | Bankers Healthcare |
| Trupp, CJ | Sterling National Bank |
| Tumbarello, Thomas | Sterling National Bank |
| Urbanski, Ted* | Greater Bay Capitol |
| Vinson, Oleg | Sterling National Bank |
| Waggoner, Brian | Irwin |

* Judgment has been entered in state court litigation.

## Exhibit C

**INTERVENING PARTIES**

| | |
|---|---|
| Baron, Paul | Lewis, Grant |
| Basco, David | Lightner, Thomas |
| Bergrin, Jon | Lind, Andrew |
| Billings, Sean | Marson, Russell |
| Boland, Matthew | McKeel, Brandon |
| Bower, Brandt | Mittag, Harland & Krauss |
| Bridenstine, Kelly | Murray, Robert |
| Bushman, Dennis | Neuber, James |
| Carr, Samuel | Nolan, William |
| Cavaciuti, Eric | Northern Lights Chiropractic |
| Charpentier, Dan | Peters, Aaron and Jennifer |
| Cheney, Matthew | Podjowski, Paul |
| Childs, Gary | Powers, Linda |
| Choi, Eric | Ratspizecher, Brad |
| Claire, Kenneth | Rawlings, Lance |
| Clarke, Fred; Wingate, Jeff | Ray, K. Patrick |
| Cosgrove, Susan | Reyes, Philip |
| DiBella, Kevin | Richards, Susan; Sampson, David; Donahue, Thomas |
| Druckman, Stuart | Richardson, Brad |
| Filipkowsky, Kimberly | Riello, Anthony |
| Fralicker, J. Allen | Roessler, Micheal |
| Friedman, Greg | Ross, Jesse |
| Gappa, Jeffrey | Rusick, David |
| Gemp, Annette; Nored, Jim | Saffapour, Mamek; Shabestari, Hamid |
| Ghariban, Derick | Scherr, Gregory |
| Ghojallu, Hutan | Schumacher, Larry |
| Gregg, Robert | Scranton, Robert |
| Hainer, Donald | Shelby, Scott |
| Harris, Richard | Shelton, Timothy |
| Hart, Walter Joseph | Stelluti, John |
| Haskin, Gregory | Stephen, Joseph |
| Henriksen, Duane | Stephen, Randy |
| Herdocia, Filiberto | Storts, Frank |
| Ho, Jeffrey | Strelec, Sean |
| James, Det | Strombeck, Peter |
| Jex, Kevin | Szigety, Darcy |
| Kenny, Robert | Taylor, Micheal |
| Kiesau, Eric | Tenney, Tad |
| Kirk, Mark | Tessier, David |
| Kissinger, Marc D. | Thomas, William |
| Klein, Jeffrey | Thurman, Michael |
| Kolita, Gary | Trupp, CJ |
| Kraftnick, Karen | Tumbarello, Thomas |
| Kriva, William | Urbanski, Ted |
| Kureshi, Masood | Vinson, Oleg |
| Kuskin, Robert | Waggoner, Brian* |
| Le, Kevin | Wind, Marc |
| Lee, Stephen | Wright, Sean |

* The Court understands Mr. Waggoner has withdrawn his motion to intervene as to the Lenders.