

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**04/14/2008**

| | | |
|---|---|---|
| IN RE: | § | |
| TODAY'S DESTINY, INC. | § | CASE NO: 05-90080 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| JOSEPH M. HILL | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3285 |
| | § | |
| MICHAEL DAY, *et al* | § | |
| Defendant(s) | § | |

## <u>MEMORANDUM OPINION ON MOTIONS TO DISMISS</u>

### *Factual Background*

On October 13, 2005, Today's Destiny, Inc. ("Debtor") filed a chapter 7 bankruptcy petition. Debtor was in the business of selling "predictive dialing equipment." "Predictive dialing equipment" is designed to increase the efficiency of telemarketers by assuring that marketing agents are connected only to "live" persons rather than to unanswered phones, voice mail, or answering machines. The chapter 7 Trustee alleges that Debtor engaged in the fraudulent sale and leasing of this equipment. The Debtor's principals ("Insiders")[1] deny these allegations. The Trustee also asserts claims against lenders who financed the equipment sales and leases ("Lenders").[2]

---

[1] The "Insiders" include the following: Michael Day, president, chief executive officer and chairman of the board; Max K. Day, senior vice president and chief operating officer; Max O. Day, vice president; Chaz Robertson, vice president of sales; Joshua Smith, vice president of operations; Jared Day, the "closer" in the sales department and; Terry Vanderpool, General Counsel. On July 12, 2007, a default judgment was entered against Chaz Robertson and Joshua Smith.

[2] The term "Lenders" refers to financial institutions, other lenders, and leasing companies, as used in the Court's Memorandum Opinion on Motions to Intervene and Order issued on July 6, 2007.

### *Procedural Background*

On March 21, 2006, the Trustee filed an adversary complaint.  The Trustee alleged that Debtor was formed and operated by various individuals and did business through its affiliates, including The Next Generation, Medicus, IBD, and Straightway.  The complaint alleged that the Insiders and affiliates acted as alter egos of Debtor to fraudulently convey or conceal assets belonging to Debtor and the bankruptcy estate.

On September 22, 2006, the Trustee filed a motion to amend the First Amended Complaint and a Motion for Authority to Enter into Agreement to Prosecute Related Claims and Causes of Action.  Through these motions, the Trustee sought to add Lenders as defendants and enter into a joint prosecution agreement with non-debtor individuals (the "Intervenors")[3] who wished to prosecute similar claims.

The Court held a hearing on the motions on October 17, 2006.  During the hearing, the Trustee withdrew the joint prosecution motion, the Court denied the Trustee's motion seeking leave to file a second amended complaint, and the Court entered a Case Management Order setting deadlines for parties seeking to intervene.  The Court also ordered the complaint amended to include all claims to be asserted by the putative Intervenors.  Between December 27, 2006, and January 3, 2007, ten motions to intervene were filed with over 85 individuals seeking to intervene.

In early 2007, Insiders and Lenders filed motions to dismiss.  The motions primarily argued:

- The Trustee lacks standing because his claims were claims owned by individual Intervenors, not the estate.

- *In pari delicto* bars the Trustee from bringing the claims.

---

[3] The Court will refer to all parties seeking to intervene as "Intervenors."  Intervenors are individuals and entities that purchased or leased Debtor's "predictive dialing equipment" through financing provided by Lenders.

● Venue is improper.

● The Court should abstain.

A substantial part of the Motions to Dismiss were based on arguments that the Trustee lacked standing to assert certain claims for injuries sustained directly by Intervenors.  On July 6, 2007, the Court issued a Memorandum Opinion and Order on Motions to Intervene.  Within that Opinion, the Court determined whether the Trustee or Intervenors had standing to assert claims asserted in the Trustee's complaint.  The Court rejected the Trustee's assertions as to ownership of certain claims.  The Court attached a chart as "Exhibit A" stating which claims the Trustee owned and which claims the putative Intervenors owned.  Parties were given until August 2, 2007 to object to the Court's characterization of the claims.  After consideration of the objections filed, the Court's characterizations stand.[4] Pursuant to the Court's Memorandum Opinion and Order on Motions to Intervene, the Court grants Defendants' Motions to Dismiss with respect to

---

[4] Sterling Bank filed a Motion for Reconsideration with Respect to Trustee's Ownership of Claims (docket no. 414). Upon review of the motion, the Court finds the request a supplement to its motion to dismiss rather than a request to re-characterize claim ownership.

HPSC Inc. and Sterling Bank filed Motions for Reconsideration concerning claims with respect to three Intervenors (docket no. 397 and 398).  Both motions contend that the Intervenors should not be allowed to intervene because they purchased their equipment from IBD and Medicus, not Today's Destiny.  The Court's Opinion dealt largely with Intervenors' right to assert claims against Today's Destiny's Insiders.  The Insiders allegedly used IBD and Medicus to carry out the same fraudulent scheme allegedly carried out by Today's Destiny.  Whether the Intervenors purchased or leased their equipment from Today's Destiny or a related entity used by the Insiders to carry out the same scheme is irrelevant.  The key inquiry in the Court's opinion was the "commonality" shared by the Trustee's and Intervenors' claims against the Insiders and whether the matters were "related to" title 11.  The claims, whether based on equipment sold by Today's Destiny, IBD, or Medicus, all involved the same allegedly fraudulent scheme. Claims against IBD and Medicus also fall within the Court's "related to" jurisdiction.  The Trustee's Amended Complaint alleges that IBD and Medicus were alter egos's of Today's Destiny used to continue Today's Destiny's fraud.  The Court granted a default judgment against IBD and Medicus (docket no. 51) making them Today's Destiny's alter egos.  Based on that default judgment, claims against IBD and Medicus are claims against the estate. Additionally, Medicus and IBD's assets may be used to pay Today's Destiny's liabilities.  Consequently, claims against IBD and Medicus have a "conceivable effect" on the estate. *Arnold*, 278 F.3d at 434.  The Court denies HPSC and Sterling's Motions for Reconsideration.

AEL filed an Objection that also asks the Court to reconsider its grant of intervention to an Intervenor (docket no. 413).  AEL notes that David Tessier did not comply with the Court's Case Management Order requiring Motions to Intervene to be filed by Dec. 31, 2006.  Tessier never filed a Motion to Intervene.  Tessier has not responded to AEL's motion.  Accordingly, the Court grants AEL's objection.  A separate order will be issued.

the Trustee's standing to assert claims on behalf of Intervenors and the related venue arguments.[5]

Consistent with "Exhibit A" of the Memorandum Opinion, the following claims are dismissed

from the Trustee's complaint:

- A portion of the Breach of Fiduciary Duties claim against Michael Day, Max K. Day, Max O. Day, Chaz Robertson, Joshua Smith, and Terry Vanderpool.

- A portion of the claim for Aiding and Abetting Breach of Fiduciary Duties against Jared Day and Lenders.

- Fraud and Fraudulent Inducement against Max K. Day, Michael Day, Max O. Day, Chaz Robertson, Jared Day, Joshua Smith, and Terry Vanderpool.

- Conspiracy to Defraud and to Breach Fiduciary Duties against Michael Day, Max O. Day, Max K. Day, Chaz Robertson, Joshua Smith, Terry Vanderpool, and Lenders.

- Rescission against Lenders.

- Violations of the Texas Deceptive Trade Practices - Consumer Protection Act against Lenders.

- A portion of the additional claims against Sterling National Bank for Aiding and Abetting Breach of Fiduciary Duties and Fraud.

- Request for Declaratory Judgment against Lenders.

Contemporaneously with this Opinion, the Court is issuing an order requiring the Trustee

to file an amended complaint and the Intervenors to file initial complaints.

### Scope of this Opinion

This Memorandum Opinion considers the Motions to Dismiss with respect to the

Trustee's surviving claims.  The Court divides the Motions to Dismiss into two categories: (1)

Motions to Dismiss filed by the Insiders; and (2) Motions to Dismiss filed by the Lenders.  The

primary issues remaining include whether: (1) the doctrine of *in pari delicto* bars the Trustee

from asserting his claims; (2) the Trustee may bring contribution claims under the Texas Civil

---

[5] The venue argument was based on the assertion that the Trustee could not litigate individual Intervenors' claims. The Court's Memorandum Opinion and Order on Motions to Intervene mooted this argument.  Venue is proper for the claims the Trustee may litigate.

Practice and Remedies Code; and (3) the Court should abstain.[6]

### *Motions to Dismiss filed by Insiders*

A default judgment has been entered against Chaz Robertson and Joshua Smith.  The Court addressed the Motion to Dismiss by Terry Vanderpool at a separate hearing on July 26, 2007.[7] Therefore, only the following claims survive in the Trustee's Second Amended Complaint as to the Insiders:

- Breach of Fiduciary Duties against Michael Day, Max K. Day, Max O. Day, Chaz Robertson, Joshua Smith, and Terry Vanderpool.

- Defendants' Liability as Alter Egos or for Sham to Perpetrate a Fraud against Michael Day, Max K. Day, Max O. Day, Medicus Marketing, IDB, and Joshua Smith.

- Denuding the Corporation and Conspiracy to Denude the Corporation against Michael Day, Max K. Day, and Max O. Day.

Michael Day, Max K. Day, Max O. Day, and Jared Day filed a joint Motion to Dismiss. The Insider's primary argument in their Motion to Dismiss and stated at the hearing is based on Rule 7009.  Prior to the July 12, 2007 hearing, the Court issued a scheduling order in which it stated that it would not consider Rule 7009 issues at the July 12, 2007 hearing.  There was little argument asserted by the Insiders under Rule 7012(b)(6).[8] Insiders' Motion contains two

---

[6] Defendants' Motions' to Dismiss also raised Rule 8, 9, and 12(e) objections to the Trustee's complaint.  Prior to the July 12, 2007 hearing, the Court issued a scheduling order in which it stated that it would not consider Rule 7009 issues at the July 12, 2007 hearing.  The Court will resolve these objections, if necessary, after the Trustee has filed an amended complaint.

[7] The Court considered Vanderpool's Motion to Dismiss at a separate hearing date due to notice issues.  At the July 26, 2007 Vanderpool hearing, the Court overruled in part and sustained in part Vanderpool's Motion to Dismiss. The Court overruled Vanderpool's objections based on Federal Rule of Civil Procedure 12(f).  The Court overruled Vanderpool's objections based on Federal Rule of Civil Procedure 12(b)(6) for claims that alleged injuries to Today's Destiny.  The Court sustained Vanderpool's objections based on 12(b)(6) for claims that alleged injuries to creditors.  The Court considers the balance of Vanderpool's Motion to Dismiss in this Memorandum Opinion and in conjunction with the Motions to Dismiss filed by all Insiders.

[8] Insiders' 12(b)(6) arguments focused on claims the Trustee sought to assert on behalf of Intervenors.  The Court's Memorandum Opinion on Intervention resolved these issues.

remaining defenses the Court considers in this Opinion: *in pari delicto* and abstention.[9]

### Motions to Dismiss filed by the Lenders

The remaining causes of action asserted by the Trustee against the Lenders include:

- Aiding and abetting breach of fiduciary duties.

- Contribution.

Lenders' Motions contain three remaining defenses the Court considers in this Opinion: *in pari delicto*, invalidity of the Trustee's contribution claims, and abstention. [10]

### Jurisdiction and Venue

The Court has subject matter jurisdiction pursuant to § 1334.  As established in the Court's Memorandum Opinion on Motions to Intervene, this is a "related to" proceeding.  Venue is proper in this District pursuant to 28 U.S.C. § 1409.

### Law: Standard for Motion to Dismiss

A motion asserting a 12(b)(6) defense allows for dismissal due to a "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  The issue in a 12(b)(6) motion is whether a plaintiff is entitled to offer evidence to support its claim.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court must determine, "in the light most favorable to the plaintiff, whether the complaint states any valid claim for relief." *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir. 1994). All well-pleaded allegations contained in the plaintiff's complaint must be accepted by the court as true. *Albright v. Oliver,* 510 U.S. 266, 268 (1994). In addition, all facts

---

[9] Insiders' Amended Motion to Dismiss also contains a motion to strike under Rule 12(f).  The Court will consider this objection, if necessary, in any responsive pleadings to the Trustee's amended complaint.

[10] The Trustee asserted additional claims against Sterling National Bank.  The Court's Memorandum Opinion on Intervention held that the Intervenors, not the Trustee, held the claims asserted against Sterling except for the claims asserted in paragraph 192 of the Trustee's Second Amended Complaint.  Paragraph 192 asserts that Sterling aided and abetted Insiders' breach of fiduciary duties.  The same claim is asserted against all Lenders.  Consequently, the Court's Opinion does not give separate consideration to the claims asserted against Sterling.  The Court's consideration of Lenders generally includes Sterling.

pled must be specific, not merely conclusory. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). When evaluating Rule 12(b)(6) motions, the Court should not grant a dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

*Analysis*

**A. In Pari Delicto**

To determine whether the *in pari delicto* defense is proper, the Court must consider whether:

● *In pari delicto* exists in Texas despite the enactment of the Proportionate Responsibility Statute.

● This proceeding is a proper venue to assert the defense.

● *In pari delicto* applies to a Trustee asserting claims that benefit the estate's creditors rather than a party who committed wrongdoing.

*i. Effect of the Proportionate Responsibility Statute*

The Trustee contends that *in pari delicto* was abolished by passage of Chapter 33 of the Texas Civil Practice and Remedies Code (the "Proportionate Responsibility Statute"), last amended in 1995.

The Court rejects the Trustee's argument. The Texas legislature did not include within the Proportionate Responsibility statute a provision excluding tort-feasors who engaged in criminal conduct. Moreover, Texas state courts, and the Fifth Circuit applying Texas law, have continued to apply *in pari delicto* after the statute's passage and most recent amendment. *See Rico v. Flores*, 481 F.3d 234 (5th Cir. 2007); *Gladu v. Wallace*, No. 11-02-00211-CV 2003 WL 2010946 (Tex. App.—Eastland May 1, 2003, no pet.); *Villanueva v. Gonzalez*, 123 S.W.3d 461, 467 (Tex. App.—San Antonio, 2003, no pet.); *Int'l Bank of Commerce—Brownsville v. Int'l*

*Energy Dev. Corp.*, 981 S.W.2d 38, 52 (Tex. App.—Corpus Christi, 1998, pet. denied).[11]

### ii. Venue

Insiders and Lenders framed the *in pari delicto* defense as a standing and 12(b)(6) (failure to state a claim for which relief can be granted) issue.  The Trustee contends that *in pari delicto* is an affirmative defense that cannot be raised in a motion to dismiss.  Rather, the Trustee contends that further discovery is necessary before the Court can determine if *in pari delicto* is applicable.

The Trustee is correct that *in pari delicto* can not independently defeat the Trustee's *standing* to raise a claim.  In the bankruptcy context, the Trustee's standing is a claim *ownership* issue.  The question is whether a claim is "property of the estate" or a claim that only a creditor can bring on the creditor's own behalf.  In the Fifth Circuit and the majority of circuits, *in pari delicto* operates as an affirmative defense to a claim's *merits*, but can not independently preclude a Trustee's standing to bring a claim.  "[T]he questions of whether a party has standing and whether the party's claims are barred by an equitable defense are separate questions." *In re IFS Financial Corp.*, Bank. No. 02-39553, Ad. No. 04-3841, 2007 WL 1308321 (Bankr. S.D. Tex. May 3, 2007) (citing *Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1286 (5th Cir. 1994). In  *Educators*, the Fifth Circuit noted: "That the defendant may have a valid defense on the merits of a claim brought by the debtor goes to the resolution of the claim, and not to the ability of the debtor to assert the claim." *Id*. at 1286. *See also In re Andrews*, Adv. No. 94–2160, 2007 WL 596706 at *4 (Bankr. S.D. Tex. Feb. 21,

---

[11] The Trustee contends that, post-1995, Texas courts apply *in pari delicto* only to cases involving illegal contracts. Though post-1995 cases may have involved illegal contracts, no case states that *in pari delicto* is limited to illegal contracts.  The Trustee has not offered nor does the Court see a rationale for limiting the doctrine to illegal contract cases.  Whether the illegality stems from the character of a contract or the character of conduct is irrelevant to *in pari delicto*'s purpose: to prevent wrongdoers from benefiting from or mitigating the consequences of their illegal actions. *Lewis v. Davis*, 199 S.W.2d 146, 151 (Tex. 1947).

2007); *In re Senior Cottages of America, LLC*, 482 F.3d 997 (8th Cir. 2007) (and cases cited); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991). To the extent that wrongful conduct was considered by the *Educators* Court, it was only considered in the context of whether the estate was *harmed* by the wrongful conduct and therefore had a claim belonging to the estate.  Based on *Educators*, the *consequences* of wrongful acts may influence the standing issue, but *in pari delicto* can not, alone, defeat standing.  Consequently, the Trustee's claims can not be dismissed for lack of standing.

However, Lenders have asserted a separate basis for dismissal: Rule 12(b)(6) failure to state a claim for which relief can be granted.  Neither the *Educators* nor *Shearson* Courts dealt with the issue presented here: whether, assuming the Trustee has standing, *in pari delicto* independently bars the Trustee from asserting a claim on behalf of the estate.  With respect to the 12(b)(6) argument, the question is not whether the Trustee has the right to assert a claim.  The question assumes the Trustee *can* assert the claim.  Instead, the issue is whether the defense of *in pari delicto* absolutely defeats the Trustee's claims so that the Trustee has not stated a claim for which relief can be granted.  In this case, the facts that would support the *in pari delicto* defense are within the four corners of the Trustee's complaint.[12] Because the facts are necessary for the

---

[12] The Trustee does not dispute Debtor's involvement in the alleged fraud.  The first paragraph of the factual background recited in the Second Amended Complaint states the following:

> During the years 1997 – 2005, Today's Destiny – in concert with the persons and entities named as defendants in this action – perpetrated a fraud of massive proportion against innocent service professionals across the nation.  The scam involved the sale by Today's Destiny of worthless marketing equipment to innocent purchasers, who were induced to finance their purchase through third-party lenders who conspired with Today's Destiny to defraud the service professionals.

Sec. Am. Compl. ¶ 38.  Later, the Complaint states:

> As of the date of this complaint, Customers of Today's Destiny have filed more than 280 proofs of claim against the Today's Destiny bankruptcy estate, and such claims total almost $11 million.  Trustee anticipates that additional claims will be filed.  The claims arise out of the

viability of the complaint, the Court will consider the defense under 12(b)(6).

### iii. *In Pari Delicto Application*

The Fifth Circuit has not ruled on whether *in pari delicto* applies to trustees asserting claims on behalf of a bankruptcy estate.  However, the majority of circuits apply *in pari delicto* to trustees. *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1151 (11th Cir. 2006) ("If a claim of ETS would have been subject to the defense of *in pari delicto* at the commencement of the bankruptcy, then the same claim, when asserted by the trustee, is subject to the same affirmative defense.") (citing *Grassmueck v. Am. Shorthorn Ass'n.*, 402 F.3d 833, 837 (8th Cir. 2005); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 356–57 (3rd Cir. 2001); *Terlecky v. Hurd (In re Dublin Sec. Inc.)*, 133 F.3d 377, 381 (6th Cir. 1997); *Sender v. Buchanan (In re Hedged-Inv. Assocs.)*, 84 F.3d 1281, 1285 (10th Cir. 1996); *Official Comm. of Unsecured Creditors of Color Tile v. Coopers & Lybrand, LLP*, 332 F.3d 147, 158–66 (2nd Cir. 2003)). This Court has no reason to believe that the Fifth Circuit would depart from the majority of its sister courts.

Texas law governs whether *in pari delicto* bars the Trustee's claims. *In re IFS Financial Corp.*, 2007 WL 1308321 *3 (citing *Nisselson v. Lernout*, 469 F.3d 143, 154 (1st Cir. 2006). Texas courts refer to the doctrine of *in pari delicto* as the "unlawful acts rule." *Rico v. Flores*, 481 F.3d 234, 241 (5th Cir. 2007).  Generally, the rule bars a party from asserting an action based upon the party's own criminal conduct. *Id*. at 242 (citing *Gulf, Colorado & Santa Fe Railway Co. v. Johnson*, 9 S.W. 602, 603 (Tex. 1888); *Rodriguez v. Love*, 860 S.W.2d 541, 544 (Tex. App.—El Paso 1992, no writ); *Marathon Oil Co. v. Hadley*, 107 S.W. 2d 883, 885 (Tex.

---

Customer's purchase of the Program/System and – in most cases – out of the claimant's liability for financing those purchases through the lenders.

Sᴇᴄ. Aᴍ. Cᴏᴍᴘʟ. ¶ 164.

Civ. App.—Fort Worth 1935, writ dism'd)). "[W]here it is shown that, at the time of the injury, the plaintiff was engaged in the denounced or illegal act, the rule is, if the illegal act contributed to the injury, he can not recover; but if plaintiff's act did not contribute to the injury, the fact alone that at the time he was engaged in an act in violation of law will not of itself preclude recovery." *Gulf, Colorado & Santa Fe. Railway Co.*, 9 S.W. at 603. "But, if a party can show a complete cause of action without being obliged to prove their own illegal act, although the illegal act may appear incidentally and may be important in explanation of other facts in the case, they may recover." *Rodriguez*, 860 S.W.2d at 544 (citing *Associated Milk Producers v. Nelson*, 624 S.W. 2d 920, 924 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). The doctrine "enforce[s] a public policy of precluding recovery for damages resulting from the willful commission of crimes." *Lindley* v. *Hackard & Holt*, No. 3:05-CV-1476-L, 2007 WL 1119287 (N.D. Tex. April 13, 2007). "[C]ourts should not lend their good offices to mediating disputes among wrongdoers" and "denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985).

However, even when parties are *in pari delicto*, "relief will sometimes be granted if public policy demands it." *Lewis v Davis*, 199 S.W.2d 146, 151 (Tex. 1947).  The Texas Supreme Court has stated:

> The rule is adopted not for the benefit of either party and not to punish either of them, but for the benefit of the public . . . There is often involved, in reaching a decision as to granting or withholding relief, the question whether the policy against assisting a wrongdoer outweighs the policy against permitting unjust enrichment of one party at the expense of the other.  The solution of the question depends upon the ***peculiar facts and equities of the case***, and the answer usually given is that which it is thought will better serve public policy.

*Id*. (emphasis added).

Insiders Max K Day, Mike Day, Max O Day, and Jared Day, contend that *in pari delicto* denies the Trustee standing to assert claims against them.   Based on *Educators* and the discussion above, this argument is negated.   *In pari delicto* does not bar standing to bring a claim.   The Court's standing rulings set forth in its Memorandum Opinion on Motions to Intervene resolved the standing issues.   Moreover, Insiders fail to cite any authority supporting the proposition that *in pari delicto* bars a Trustee from asserting claims against Insiders for their wrongful conduct *because of* the same wrongful conduct.   The Trustee is not asserting claims against third-parties for injuries arising from Insiders' wrongful conduct.   The Trustee is asserting claims against the very Insiders for their own wrongful conduct.   No case, logic, or equitable proposition supports the conclusion that insiders of a bankrupt corporation can insulate themselves from liability by virtue of the illegal character of their conduct.   Granting Insiders relief based on *in pari delicto* would directly oppose *in pari delicto's* purpose of denying assistance to wrongdoers.   The Court denies Insiders' *in pari delicto* defense.

As for the Lenders, the Trustee's aiding and abetting and contribution claims arise from the fraudulent conduct allegedly executed by the debtor, Today's Destiny.   The Trustee stands in the shoes of the debtor corporation and therefore holds only those claims that the debtor could assert on its own behalf. *Yaquinto v. Segerstrom (In re Segerstrom*), 247 F.3d 218, 224 (5th Cir. 2001); *Askanase v. Fatjo*, 130 F.3d 657, 668 (5th Cir. 1997). *See also* 11 U.S.C. § 541. Claims asserted by the Trustee are subject to all the defenses that could have been asserted against the debtor. *Id.*

The four corners of the Trustee's complaint affirmatively state that Today's Destiny was engaged in illegal conduct.   However, the fact that the Trustee is *in pari delicto* does not justify 12(b)(6) dismissal.   Under *Lewis*, *in pari delicto* is not an automatic bar.   Under *Lewis*, the Court

must consider how the facts and equities of the individual case interact with the policy *in pari delicto* was designed to serve. *Lewis*, 199 S.W.2d at 151. The need to consider the "peculiar facts and equities" is particularly acute when a defendant is asserting the defense against a Trustee who seeks recovery for the benefit of creditors of a wrongdoer rather than the wrongdoer himself. *See IFS Financial Corp.*, 2007 WL 1308321 at *4.

A *Lewis* policy analysis can not be undertaken prior to discovery and an evidentiary hearing. In the present case, consideration of the equities and public policy may exempt the Trustee from *in pari delicto*'s application. The Trustee may be able to demonstrate that any recovery would benefit only innocent creditors, not the wrongdoers. Prior to an evidentiary hearing in which the Court can consider how the particular facts and equities of this case influence *in pari delicto*, the Court can not dismiss the Trustee's claims under Rule 12(b)(6).[13]

The Court can, as a matter of law, rule that *in pari delicto* does not bar the Trustee's contribution claim. The Lenders have not cited and the Court has not found case-law applying *in pari delicto* to contribution claims. The Texas legislature affirmatively enacted a public policy of contribution among joint tort-feasors by enacting the contribution statute of the Texas Civil Practice and Remedies Code. The legislature did not exempt from the statute joint tort-feasors who participated in criminal acts with other joint tort-feasors. The Trustee is not asserting a *tort claim* against *innocent* parties injured by the estate. The Trustee is asserting *contribution claims* against an alleged *joint tort-feasor*. The differences in application of a contribution claim versus

---

[13] The Trustee also contends that the "adverse interest rule" excepts the Trustee from application of *in pari delicto*. The "adverse interest" rule protects corporations from imputation of an agent's conduct where the agent acted "entirely for his own or another's purpose." *F.D.I.C. v. Shrader & York*, 991 F.2d 216, 223 (5th Cir. 1993) (quoting RESTATEMENT (2D) OF AGENCY § 282(1) (1957) and citing *Forest Park Lanes, Ltd. v. Keith*, 441 S.W.2d 920, 931 (Tex. Civ. App. 1969). *See also Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 579–581 (Tex. 1963); *White Point Oil & Gas Co. v. Dunn*, 18 S.W.2d 267, 270 (Tex. Civ. App.—San Antonio 1929, writ dism'd); 15 TEX. JUR. 3D *Corporations* § 422 (2006). Because the Court denies Defendants' Motion to Dismiss on other grounds, and because application of this rule is fact intensive, the Court reserves judgment on the "adverse interest rule."

a direct claim have significant consequences with respect to the policy *in pari delicto* serves.

The policy motivating *in pari delicto* is that criminal actors should bear full responsibility for their criminal conduct. *Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466, 470 (Tex. App.—San Antonio, 1994, writ denied) ("[The] basic policy is that individuals who have committed illegal acts shall not be permitted to profit financially or be otherwise indemnified from their crimes.") (citing *Peeler v. Hughes & Luce*, 868 S.W.2d 823, 831–33 (Tex. App.— Dallas, 1993, writ granted, judgment affirmed). "Punishment for crime is intended to be personal and absolute." *Id*. (quoting *Houston Ice & Brewing Co. v. Sneed*, 132 S.W. 386, 388–89 (Tex. Civ. App. 1910).

Allowing contribution between joint tort-feasors for liability arising from a single course of allegedly shared criminal conduct does not conflict with *in pari delicto's* policy goals.  Here, a defendant who participated in alleged wrongful conduct is seeking contribution from a second defendant who allegedly participated in the *same* wrongful conduct.  The defendant seeks contribution only in proportion to the defendant's responsibility for the criminal conduct. Contribution is limited to the joint tort-feasor's *proportional* responsibility.  Additionally, any recovery obtained by the Trustee's lawsuit will not benefit wrongdoers.  Recovery will go to the estate to pay creditors.  Insiders who committed the alleged malfeasance are named as *defendants* from whom recovery is sought.  Any damages obtained by the Trustee will be paid *by*, not *to*, malfeasant Insiders.  Today's Destiny's estate will not "profit" from a contribution claim that will be redistributed to creditors.

Consequently, the Court denies Lenders' Motions to Dismiss with respect to the Trustee's contribution and aiding and abetting claims.  The contribution claim is not subject to *in pari delicto*.  The Court reserves judgment, until further inquiry, as to whether *in pari delicto*

applies to the aiding and abetting claim.

### B. Contribution

Individuals and entities who purchased Today's Destiny's "predictive dialing equipment" ("Customers") have filed over 280 proofs of claims amounting to over $11 million.  The Trustee expects additional claims to be filed.  The Trustee alleges that the claims arise from Today's Destiny's alleged fraud and that Lenders aided and abetted the fraud.  Consequently, the Trustee asserts that the Lenders are joint tort-feasors and Today's Destiny's estate is entitled to contribution from the lenders under the Proportionate Responsibility Statute.

Lenders argue that the Proportionate Responsibility Statute is inapplicable.  Lenders contend that the statute: (i) excludes settling Lenders; (ii) only applies to tort claims, while Customers only hold contract claims; and (iii) requires a pending lawsuit against the party seeking contribution, while Customers have filed only proofs of claim in this adversary proceeding.

Based on the analysis below, the Court holds that Today's Destiny's estate may plead a contribution claim against Lenders.  However, the Court does not hold that the Trustee *has* a contribution claim.  The Court does not hold that the Trustee's *assertion* of a contribution claim could survive a summary judgment motion or other pre-trial pleadings that may be submitted in the future.  Some or all arguments raised by Lenders may be proven true, but the arguments are constructed for a procedural context that has not yet been reached.  Lenders' motions asserted a Rule 12(b)(6) defense: failure to state a claim for which relief can be granted.  When faced with a 12(b)(6) motion, the plaintiff need only show that it has a valid claim under allegations assumed correct. *Conley*, 355 U.S. 45–46 (Courts should not grant a dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief."). Consequently, when analyzing the statute, the Court only considers whether the Trustee *could* assert a contribution claim based on allegations assumed true.

The Court considers Lenders' arguments in tandem with an analysis of the Texas Proportionate Responsibility Statute.

### i. Texas Proportionate Responsibility Statute

Neither the Bankruptcy Code nor Federal common law creates a right of contribution. *Walker v. Cadle Co.*, 51 F.3d 562, 566 (5th Cir. 1995) (citing *Wieboldt Stores, Inc. v. Schottenstein*, 111 B.R. 162, 167 (N.D. Ill. 1990); *Barber v. Riverside Int'l Trucks, Inc. (In re Pearson Indus.)*, 142 B.R. 831, 848 (Bankr. C.D. Ill. 1992)). Consequently, the Trustee's contribution claim is dependent upon Texas statute.  Chapter 33 of the Texas Civil Practice and Remedies Code governs contribution rights in Texas (the "Texas Proportionate Responsibility Statute").

The Texas Proportionate Responsibility Statute carefully defines *who* may seek *what* contribution against *whom* and *when* contribution claims may be asserted.

Section 33.016(b) defines *who* may assert contribution claims and *when,* and under what circumstances, contribution claims may be brought.  The provision provides:

> "Each **liable defendant** is entitled to contribution from each person who is **not a settling person** and who is liable to the **claimant** for a percentage of responsibility but from whom the claimant seeks no relief at the time of submission.  A party may assert this contribution right against any such person as a **contribution defendant** in the **claimant's action**."

(emphasis added).

Section 33.002(a) further defines part of the *where*.  Section 33.002(a) generally defines the scope of the statute's applicability.  The provision states that the statute applies only to a "**cause of action based on tort** in which a defendant, settling person, or responsible third party is

found responsible for a percentage of the harm for which relief is sought . . .”[14] (emphasis added).

Based on a close reading of the two above provisions and the statute in its entirety, a *liable defendant* may seek contribution from a *non-settling contribution defendant* based on *tort liability* subject to adjudication within an *action*.

### ii. Whom: Non-Settling Contribution Defendants

#### a. Settling Defendants

The Texas Proportionate Responsibility Statute precludes the Trustee from asserting a contribution claim against Lenders that have settled all claims asserted against them by Customers.   Section 33.016(b) specifically provides that a liable defendant may not seek contribution from "settling persons."  Section 33.015(d) further reiterates that: "No defendant has a right of contribution against any settling person."

Section 33.011(5) defines settling person as: "a person who has, at any time, paid or promised to pay money or anything of momentary value to a claimant in consideration of potential liability with respect to the personal injury, property damage, death, or other harm for which recovery of damages is sought."

Various Lenders have filed Statements of Settlement indicating settlement of all claims held by Customers against the Lender.  To the extent that any Lender has settled all Customer claims asserted against the Lender, and the settlements cover all potential claims held by the Customer rather than only contract claims, that Lender is a "settling person."  The statute

---

[14] The Statute also applies to "any action brought under the Deceptive Trade Practices-Consumer Protection Act (Subchapter E, Chapter 17, Business & Commerce Code) in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought." § 33.002(a)(2).

precludes contribution from a "settling person."[15]

Pursuant to this Memorandum Opinion, the Trustee shall file an amended complaint.  The amended complaint should not seek contribution from Lenders that qualify as "settling persons."

*b. Contribution Defendant*

Section 33.016(a) provides: "In this section, 'contribution defendant' means any defendant, counter-defendant, or third-party defendant from whom any party seeks contribution with respect to any portion of damages for which that party *may be liable,* but from whom the *claimant seeks no relief at the time of submission*." (emphasis added).

Lenders note that they have not been named as joint-defendants with Today's Destiny in any lawsuits filed by Customers.  However, the statute does not limit "contribution defendants" to defendants joined in a lawsuit with the party seeking contribution.  Section 33.016(a) specifically includes within the definition of "contribution defendants" defendants who "may be liable but from whom *the claimant seeks no relief at the time of submission*." (emphasis added). The key element to "contribution defendant" is potential liability to another defendant based on shared tortious conduct.

The Proportionate Responsibility Statute provides for joint and several liability for certain defendants.  Under the statute, a plaintiff can assert a cause of action against a defendant

---

[15] Today's Destiny's liability to individual Customers may still be reduced to account for Lenders' contributory conduct even when a Lender qualifies as a "settling person."  Section 33.012(b) provides: "If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause by the sum of the dollar amounts of all settlements."

Additionally, § 33.017 provides for a preservation of existing rights of indemnity.  It states:

> Nothing in this chapter shall be construed to affect any rights of indemnity granted by any statute, by contract, or by common law.  To the extent of any conflict between this chapter and any right to indemnification granted by statute contract, or common law, those rights of indemnification shall prevail over the provisions of this chapter.

TEX. CIV. PRAC. & REM. CODE § 33.017.  To the extent that Today's Destiny has a right of indemnity against a Lender qualifying as a "settling person," the Trustee's amended complaint should demonstrate this right.

who is jointly and severally liable and collect 100% of its damage award from that defendant.  §
33.013(b).  The statute, alone, does not require plaintiffs to join joint tort-feasors.  The statute
then gives a defendant held jointly and severally liable the right to assert a contribution claim
against liable defendants for any amount paid in excess of the defendants' proportionate
responsibility.  § 33.015(a). *See also In re Martin*, 147 S.W.3d 453 (Tex. App.—Beaumont
2004, pet. struck) ("We see nothing in the applicable provisions of Chapter 33 requiring that a
contribution claim be asserted in the primary lawsuit, or precluding a post-judgment contribution
claim against a joint tort-feasor who was not a party to the primary lawsuit."); *Pacesetter Pools,
Inc. v. Pierce Homes, Inc.*, 86 S.W.3d 827 (Tex. App.—Austin, 2002, no pet.) (holding that a
defendant could seek contribution after being held liable in an arbitration proceeding).[16]

Customers have filed proofs of claims against Today's Destiny amounting to over $11
million.  Under the joint and several liability provisions of the Proportionate Responsibility
Statute, Today's Destiny may face liability amounting to 100% of the Customer's claims. §
33.013(b). The Trustee has asserted that Lenders aided and abetted and conspired with Today's
Destiny to defraud Customers.  If these allegations are proven true and 100% of the liability to
Customers is imposed on Today's Destiny, Today's Destiny would be entitled to contribution
from Lenders for their proportionate share. § 33.015(a).

### iii. Who: Liable Defendant Liable to a Claimant

#### a. Liable Defendant

Section 33.011(3) defines who may be a "liable defendant."  The provision provides:
"'liable defendant' means a defendant against whom a judgment can be entered for at least a
portion of the damages awarded to the claimant."  Under the Proportionate Responsibility

---

[16]  The Court notes that the Texarkana Court of Appeals reached a contrary conclusion. *Casa Fard, Inc. v. Ford
Motor Co.*, 951 S.W.2d 865, 876 (Tex. App.—Texarkana 1997,pet. denied).  The Court finds the reasoning in
*Martin* more persuasive and more consistent with the Texas Proportionate Responsibility Statute's plain language.

Statute, anyone who contributed to a tortious harm could be subject to a judgment for a portion of the damages. § 33.013.

Today's Destiny may be a "liable defendant." There is no question that Today's Destiny may be liable to the Customers.  Customers have filed numerous proofs of claim based on alleged fraud.  Section 502(a) states: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." 11 U.S.C. 502(c). Federal Rule of Bankruptcy Procedure 3001(f) further states: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. Proc. 3001(f).  In other words, a proof of claim is presumed a valid liability of the debtor unless an interested party objects.

Lenders note that an "essential prerequisite for a contribution claim" is a judgment against the defendant who seeks contribution.  The Texas Proportionate Responsibility statute provides that only a party subject to a judgment may assert a contribution claim.  Section 33.016(b) grants contribution rights only to "liable defendants."  Section 33.011(3) defines "liable defendants" as a "defendant against whom a judgment can be entered." *See also Arnold v. Garlock Inc.*, 288 F.3d 234, 237 (5th Cir. 2002) (citing *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19 (Tex. 1987).  An uncontested proof of claim does not result in a judgment fixing Today's Destiny's liability on the proofs of claims.  Consequently, Lenders contend that they can not be subject to a contribution claim based on the proofs of claims.

Lenders have cited cases supporting their contention.  In *UNR,* the Court held that a contribution claim could not be filed based on a proof of claim because the claim had not been objected to. *UNR Industries, Inc.*, 92 B.R. 319, 328 (N.D. Ill. 1998).  The Court held:

Finally, UNR points out that under bankruptcy law, a properly filed proof of claim is "deemed allowed, unless a party in interest objects . . . " 11 U.S.C. § 502(a). Since there are no objections to the asbestos claims, UNR argues that they are allowed and therefore the equivalent of civil judgments.  But the importance of a civil judgment in an indemnity case is that it establishes a critical fact: the indemnitee's liability to the injured party. Here, UNR's liability is not fixed by the mere filing of proofs of claims because UNR continues to have the right to object to those claims and litigate its liability.  There is no time limit on UNR's right to object (*see*, 3 Collier on Bankruptcy, ¶ 502.01[3] (15th ed. 1987)), and its counsel vigorously denied at oral argument that UNR's failure to object so far constitutes an admission of liability . . . Because UNR can object to the asbestos claims at any time, and deny liability, the issue of UNR's underlying liability (a necessary predicate to American Mutual's liability) remains . . . abstract and hypothetical . . .

*Id*. at 328. *See also In re SRC Holding Corp.*, No. 06-3962, 2007 WL 1464385 (D. Minn. May 15, 2007) (holding that because "the 'presumptive validity' of the asserted claim can be rebutted by 'substantial evidence' . . . a proof of claim that has not been objected to does not, by itself, establish liability for purposes of adjudicating indemnity and/or contribution.") (citing *In re Hart Ski Mfg. Co.*, 5 B.R. 326, 328 (Bankr. D. Minn. 1980).

However, neither *UNR* nor related cases hold that a bankruptcy estate can *never* assert a contribution claim based on liability arising from a proof of claim.  *UNR's* concern focused on the need for a "fixed" liability.  A proof of claim can lead to a "fixed" liability.  *UNR*'s own holding implied that a contribution claim would arise from a proof of claim if the proof of claim was objected to and subsequently fixed in a final judgment or order that resolved the objection. Following this Memorandum Opinion and related Orders, Customer's proofs of claims will be fixed.[17]

This Court has discretionary authority to establish deadlines for claim objections. *In re Hovis*, 356 F.3d 820, 822 (7th Cir. 2004) ("[s]etting dates for filing of claims, and objecting to

---

[17] The Court does not hold that an order fixing liability on a proof of claim is equivalent to a "judgment" for all purposes.  The Court's holding is limited to the contribution claim context of this case.  The importance of a judgment in the contribution context is the determination of a liability.  Because no contribution right arises without liability, a determination of liability is a necessary prerequisite to recovery on a contribution claim.  An order fixing Today's Destiny's liability on Customers' proofs of claim accomplishes the same purpose of determining liability.

them, is within the discretion of the bankruptcy judge"). The Trustee's complaint has alleged that Lenders were an instrumental party in effectuating the fraudulent scheme from which Customers' proofs of claims arise. If the Trustee's allegations are proven true, interests of justice and administrative efficiency favor adjudication of Lender's proportional responsibility within this adversary proceeding.

Pursuant to this Memorandum Opinion, the Court has issued an order setting a deadline for filing objections to proofs of claim. Any Lender or other "party in interest" may object to the proofs of claim. Any "party in interest" who fails to object to Customers' proofs of claim will be estopped from later objecting to Today's Destiny's liability on the Customers' proofs of claim. *See Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000) (citing *In re Andersen*, 179 F.3d 1253, 1258–59 (10th Cir. 1999)); *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315–17 (4th Cir. 1996); *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1553 (11th Cir. 1990), *cert denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990); *In re Szostek*, 886 F.2d 1405, 1413 (3d Cir. 1989); *In re Gregory*, 705 F.2d 1118, 1121 (9th Cir. 1983). Failure to object to a Customers' proofs of claim will not estop any Lender or other "party in interest" from contesting any claims brought against the Lender based on Today's Destiny's liability on the Customers' proofs of claim.

After the objection deadline has passed, and if no objections are filed, the Court will issue an order allowing the Customers' undisputed proofs of claim. If objections are filed, the objection will be adjudicated in a contested matter and the Court will issue an order resolving the objection. Consequently, after the objection deadline passes and all objections have been resolved, Today's Destiny's liability for Customers' claims will be fixed pursuant to Court orders. If Today's Destiny's allegations with respect to Lenders are proven true, Today's Destiny will then have a contribution right from Lenders, but only to the extent that the Court's

orders allow the Customer's proofs of claim.

The claims may ultimately be disallowed.  However, the Texas Statute defines "liable defendant" as a defendant who *may* be held liable, not a defendant who *has* been adjudicated liable.  Section 33.016(a) defining "contribution defendants" further clarifies that a "liable defendant" need not have been actually found liable before asserting a contribution claim.  Section 33.016(b) allows defendants to assert contribution claims within a pending proceeding on the defendant's liability.  If facts plead by the Trustee are proven true, Lenders may be found liable to Today's Destiny's estate.  The key prerequisite of a contribution claim is a pending proceeding that will result in fixed liability.  After the claim objection deadline passes and claim objections have been resolved, Today's Destiny's liability to Customers will be fixed.

The Trustee's contribution claim must still survive any pre-trial motions filed after discovery commences.  The Trustee must still establish Lenders' proportionate responsibility.  However, the Trustee's contribution claim is not subject to Rule 7012(b)(6) dismissal for failure to state a claim for which relief can be granted.

### b. Claimant

Section 33.011 defines "claimant" as:

> a person seeking recovery of damages, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff.  In an action in which a party seeks recovery of damages for injury to another person, damage to the property of another person, death of another person, or other harm to another person, "claimant" includes:
>> (A) the person who was injured, was harmed, or died or whose property was damaged; and
>> (B) any person who is seeking, has sought, ***or could seek recovery*** of damages for the injury, harm, or death of that person or for the damage to the property of that person."

(emphasis added).

A creditor filing a proof of claim is a "claimant."  The "claimant" definition is broad,

"including," not *limiting* the term to plaintiffs, counterclaimants, cross-claimant or third-party plaintiffs, and including entities who "could seek recovery" but has not yet engaged in litigation. The "claimant" definition's primary characteristic is that the claimant seeks damages. The Customers' proofs of claims seek recovery of damages from Today's Destiny.

Consequently, Today's Destiny is a "liable defendant" liable to Customer "claimants."

### iv. What: Tort

The Texas Proportionate Responsibility Statute only applies to causes of action based on tort. § 33.002(a)(1). "A breach of contract claim is not a basis for contribution under chapter 33 of the Texas Civil Practice and Remedies Code." *CBI NA-CON, Inc. v. UOP Inc.*, 961.S.W.2d 336, 341 (Tex. App.—Houston[1 Dist.] 1997, pet. denied) (citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)). Moreover, "[a] defendant's claim of contribution is derivative of the plaintiff's right to recover from the joint defendant against whom contribution is sought." *CBI NA-CON,* 961.S.W.2d at 339 (citing *Shoemake v. Fogel*, *Ltd.*, 826 S.W.2d 933, 935 (Tex. 1992)).[18] Consequently, a defendant can only seek contribution from a joint tort-feasor defendant that could be liable to the plaintiff in tort. *Id*.

Based on the Texas Proportionate Responsibility Statute and case law interpreting the statute, Today's Destiny *may not* bring contribution claims against Lenders who could only be subject to contract claims by Customers. Today's Destiny *may* bring contribution claims against Lenders who could be subject to tort claims by Customers.

Customers have asserted numerous state court lawsuits against various Lenders. Some

---

[18] *CBI NA-CON, Inc.* involved a factual scenario similar to that presented in the Trustee's adversary. Plaintiff Fina sued defendant CBI for, among other things, negligence. CBI filed a third-party claim for contribution against UOP. The Court held that CBI could not bring a contribution claim against UOP. CBI's contribution claim against UOP was derivative of Fina's potential claims against UOP. Fina could only assert contract claims and *could not* assert tort claims against UOP. Consequently, CBI could not assert a contribution claim against UOP because the Texas Proportionate Responsibility Statute authorizing contribution claims does not apply to contract claims.

Lenders have asserted that Customers executed leasing agreements that precluded tort liability. Nevertheless, some Lenders may be subject to tort liability. The Trustee's Amended Complaint has alleged that Lenders participated in a fraudulent scheme that, if proven, would constitute tortious conduct. The Trustee's Amended Complaint has asserted factual allegations supporting his theory. Dismissal under Rule 12(b)(6) for failure to state a claim for which relief can be granted is improper at this stage of the litigation.

### v. When: Claimant's Action

The Lenders focus primarily on the context in which the contribution claim is sought. The Lenders primary argument goes as follows: Even if Today's Destiny's estate is entitled to contribution, the Trustee has not asserted the contribution claim in the proper procedural context. The Texas Proportionate Responsibility Statute allows a defendant to assert a contribution claim against another defendant *only* if the defendant asserting the claim has been named a defendant in an actual lawsuit and has been adjudged liable for a fixed amount. The Customers have not instituted adversary proceedings against Today's Destiny. The Customers have only filed proofs of claim in Today's Destiny's bankruptcy case. Lenders contend that filing an uncontested proof of claim does not constitute a lawsuit and is insufficient to invoke contribution rights under the Proportionate Responsibility Statute.

Based on a close reading of the Proportionate Responsibility Statute, the Court finds that a proof of claim is a sufficient basis of liability to raise a contribution claim under the statute.

The Texas Proportionate Responsibility Statute does not explicitly require a formal lawsuit prior to assertion of a contribution claim. The statute does not mandate or otherwise limit the procedural contexts in which a contribution claim may be raised. Section 33.016(b) states that a party "*may*" assert the contribution claim in the "*claimant's action.*" (emphasis

added).  May is permissive, not mandatory.  Moreover, the statute does not define "action."  The Texas legislature drafted the contribution statute with much care.  The statute provides its own definition section carefully defining numerous terms. The statute consistently refers to "cause of action" and "lawsuit" throughout the statute.  Nowhere does the statue define "cause of action" or "lawsuit" or otherwise define a proceeding limiting the adversarial contexts in which a contribution claim can be brought.  Where the legislature wished to carefully circumscribe an object, subject, or consequence of the statue, the legislature did so.  The Court will not add definitions or limit rights in the absence of explicit or implicit expressed legislative intent.

Moreover, the Fifth Circuit has explicitly stated that "filing of a proof of claim is analogous to the filing of a complaint in a civil action." *In re Continental Airlines*, 928 F.2d 127, 129 (5th Cir. 1991); *In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985) (citing *Nortex Trading Corp. v. Newfield*, 311 F.2d 163, 164 (2d Cir. 1962).  Indeed, the procedural consequences of filing a proof of claim or civil action are materially similar.  A proof of claim, like a lawsuit seeking monetary damages, is a demand for payment.  A trustee, like an ordinary civil defendant, may contest the claim.  In a civil action, the defendant must file an answer.  In a bankruptcy case, the debtor or parties in interest may file objections.  If the defendant in a civil action does not file an answer, a default judgment may be entered for the amount claimed in the lawsuit.  If no party objects, the proof of claim will be fixed by the court for the amount claimed in the proof of claim.  If the defendant in a civil action files an answer, the Federal Rules of Civil Procedure provide detailed instructions for how the parties must conduct the dispute.  If a party in interest objects to a proof of claim, a contested matter is initiated and the dispute becomes subject to substantially the same Federal Rules of Civil Procedure.  The procedural differences between filing a proof of claim in a bankruptcy court and filing a civil complaint in a district court are not

significant enough to warrant excluding the Texas Proportionate Responsibility Statute from bankruptcy courts, particularly where there is no evidence that the legislature intended an exclusion.[19]

Lenders note numerous due process concerns associated with contribution claims arising from proofs of claims. Lenders note that the procedural protections afforded by the Federal Rules of Civil Procedure within a traditional lawsuit are absent in the proof of claim process. This assertion is only partially true. A proof of claim will be allowed if a "party in interest" does not object. However, filing a proof of claim alone does not automatically trigger Lender's liability for contribution. Lenders will have an opportunity to be heard in a procedural context cushioned with the protections implemented by the Federal Rules of Bankruptcy Procedure. Proofs of claim may be objected to. Lenders, as "parties in interest," may object to the claims. An objection to a claim institutes a "contested matter." Rule 3007. A "contested matter" triggers Rule 9014. Rule 9014 subjects the contested matter to Federal Bankruptcy Rules that incorporate most Federal Rules of Civil Procedure.

Moreover, the Trustee's contribution claim is not being asserted within a proof of claim or an objection to a proof of claim. The contribution claim is being asserted within an adversary proceeding. To succeed on the contribution claims, the Trustee will have to establish each Lender's proportionate responsibility with respect to Customers the Lenders contracted with.

---

[19] Contribution claims have been allowed based on liability imposed outside of a traditional civil lawsuit judgment. *Pacesetter Pools, Inc. v. Pierce Homes, Inc.*, 86 S.W.3d 827 (Tex. App.—2002, no pet.) (holding that a party who paid damages awarded in arbitration could bring a contribution claim under Chapter 33 of the Texas Civil Practice and Remedies Code).

The Court notes that not all courts have been uniform in equating proofs of claims with lawsuits. *See In re Bentley*, 47 B.R. 269, 271 (S.D. N.Y. 1985) (holding that filing a proof of claim is not equivalent to commencement of a lawsuit for purposes of a New York procedural rule on counterclaims). This Court does not hold that a proof of claim is equivalent to a commencement of a lawsuit for *all* purposes. The Court's ruling is limited to whether a proof of claim is equivalent to commencement of a civil lawsuit for purposes of the Texas Proportionate Responsibility Statute. Based on Fifth Circuit precedent and the text of the Texas Statute, the Court holds that a debtor can assert a contribution claim for liability arising from a fixed proof of claim.

The Trustee will have to meet his burden within the present adversary proceeding.  Adversary proceedings within a bankruptcy court are afforded the procedural protections of the Federal Rules of Bankruptcy Procedure.

In short, Lenders' argument assumes that the Trustee's argument imposes immediate liability based solely on the proofs of claims.  In reality, the proofs of claim impose liability only on Today's Destiny.  Lenders may later be liable for contribution.  However, Lenders must be adjudicated proportionately responsible for Today's Destiny's liability before any contribution claims can be awarded.  The Trustee is attempting to establish that liability in the present lawsuit. The Trustee may succeed or the Trustee may fail in that attempt.  Regardless, the Texas Proportionate Responsibility Statute affords the Trustee the right to assert and litigate the contribution claim in this adversary proceeding based on Today's Destiny's liability for Customer's proofs of claim.[20]

The Court also rejects any Lender argument that a lawsuit is a prerequisite to a contribution because of the need for a final judgment.  As the Court discussed in the "liable defendant" section, the Customers' proofs of claim will be fixed after the claim objection deadline has passed and claim objections have been resolved.

Lenders also rely on *Garlock. Arnold v. Garlock Inc.*, 278 F.3d 426 (5th Cir. 2001). In *Garlock*, Garlock was sued in asbestos related litigation and named a co-defendant with Gasket Holdings. *Id.* at 430–31.  When Gasket Holding's parent company, Federal Mogul filed chapter 11 bankruptcy, Garlock began removing suits in which it was a co-defendant with Gasket

---

[20] Lenders note that the proofs of claim are insufficient to discern whether the claims are based on tort or contract, and do not plead facts sufficient for the Lenders to defend themselves.  However, the proofs of claim need not plead detailed facts to give Lenders adequate notice of the charges they face.  The Trustee's Amended Complaint has described the fraudulent scheme Lenders are alleged to have participated in and alleged supporting facts.  The issue of whether the facts alleged are sufficient to survive a Rule 9 challenge is not decided in this Opinion.

Holdings to federal courts.  *Id.* at 431.  Garlock moved for the case to be transferred to the District Court of Delaware.  *Id.*  In response, the plaintiffs moved to dismiss Federal-Mogul/Gasket Holdings as a defendant.  *Id.* at 432.  In many of the cases, Federal-Mogul/Gasket Holdings was dismissed *with prejudice* and the cases were remanded to Texas State Courts.  *Id.* Garlock then attempted to stay the remand proceedings pending an appeal in the district courts. *Id.* The Fifth Circuit noted that in the cases in which the debtor was dismissed *with prejudice*, Garlock's contribution claim against debtor was "eliminated".  *Id.* at 439.  The Court stated "[i]t is well established under Texas case law that neither contribution nor indemnification can be recovered from a party against whom the injured party has no cause of action."  *Id.* (citing *Safway Scaffold Co. of Houston, Inc. v. Safway Steel Products, Inc.*, 570 S.W.2d 225, 228-29 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.)).

The Fifth Circuit was emphasizing that contribution is not a claim for affirmative relief. Contribution is dependent upon shared liability to a common plaintiff.  Federal-Mogul/Gasket Holdings' dismissal with prejudice from the suit precluded liability to Arnold.  Consequently, Federal-Mogul/Gasket Holdings and Garlock no longer faced shared liability to Arnold. Because only Gasket Holdings faced liability, Garlock's contribution claim could no longer survive.  *Id.* (citing *Quanto Int'l Co., Inc. v. Lloyd*, 897 S.W.2d 482, 484-85 (Tex. App.—Houston [1st Dist.] 1995, no writ); TEX. R. CIV. P. 162).

In this proceeding, however, the Intervenors who have filed proofs of claim with the bankruptcy estate, have not precluded the ability to seek liability from the Lenders.  In fact, the opposite is true.  What has occurred in the bankruptcy court is that the Intervenors have filed proofs of claim based on the alleged fraudulent scheme of Debtor and Lenders.  Claims asserted against Today's Destiny for which contribution is sought have not been dismissed.

### vi. Cash Requirement

A liable defendant is entitled to contribution from a joint tort-feasor when the liable defendant pays a damage award in excess of the liable defendants' proportionate responsibility. Section 33.015(a) provides:

> If a defendant who is jointly and severally labile under Section 33.013 **pays** a percentage of the damages for which the defendant is jointly and severally liable greater than his percentage of responsibility, that defendant has a right of contribution for the overpayment against each other liable defendant to the extent that the other liable defendant has not paid the percentage of the damages found by the trier of fact equal to that other defendant's percentage of responsibility.

(emphasis added).

Lenders make both a *timing* and *feasibility* argument with respect to § 33.015(a). Lenders contend that a liable defendant can not assert a contribution claim *until* the defendant pays damages in an amount greater than the liable defendant's proportionate responsibility, or at least until the liable defendant is adjudicated liable. Today's Destiny's estate has not yet paid cash on a damage claim. Additionally, Lenders assert that liable defendants can not bring a contribution claim when the liable defendant is *incapable* of paying a damage award greater than the liable defendant's proportionate responsibility. Today's Destiny has minimal assets.

The Lender's *timing* argument misinterprets the Proportionate Responsibility Statute's mechanics and precedent. Lenders fail to distinguish the right to *assert* a contribution claim in a proceeding and when a *right to payment* on a claim arises. Lender's rely on § 33.015(a), providing that a contribution right does not arise until a liable defendant makes a payment disproportionate to the liable defendant's proportionate responsibility. However, § 33.015(a) does not prescribe the mechanics or timing of asserting a contribution *claim*. Section 33.015(a) simply provides when *liability* on a contribution claim *arises*. Section 33.016(b) describes when and where a potentially liable defendant can assert a claim. That provision provides: "A party

may assert this contribution right against any such person as a contribution defendant *in the claimant's action*." (emphasis added).  The provision explicitly authorizes a potentially liable defendant to assert a contribution claim within the plaintiff's pending action against the defendant asserting the contribution claim.  Suggesting that a defendant can not assert a *claim* prior to a disproportionate damage payment is inconsistent with the statute and without merit.

Lender's argument also misconstrues precedent.  Texas courts routinely assume that a contribution claim may be brought against a joint tort-feasor simultaneously with the determination of primary liability and before a liable defendant has been adjudicated liable or paid a judgment.  *Cf.  In re Martin*, 147 S.W.3d 453, 457-58 (Tex. App.—Beaumont 2004, pet. denied) (evaluating limitations periods for contribution claims and determining whether a claimant must assert his contribution claim in the primary lawsuit or "not at all.");  *Casa Ford, Inc. v. Ford Motor Co.,* 951 S.W. 2d 865, 876 (Tex. App.—Texarkana 1997, pet. denied) (finding that "Chapter 33 does not permit a tort-feasor to seek post-judgment contribution from a tort-feasor that was not a party to the judgment."). *See also Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 835–36 (Tex. App.—Fort Worth 2006, no pet.); *Panatrol Corp. v. Emerson Elec. Co.*, 147 S.W. 3d 518, 519 (Tex. App.—San Antonio 2004, no pet.).

Today's Destiny has only asserted a contribution *claim*.  Liability on the claim has not been established.  If liability on the claim is adjudicated in Today's Destiny's favor, then Today's Destiny will be entitled to contribution.  Section 33.016(b) unequivocally allows a defendant to assert such a claim in a pending suit prior to the liable defendant's adjudication of liability and payment on that liability.  Furthermore, as discussed within the feasibility argument below, Today's Destiny, will, by law, pay 100% of the damages sought by Customers in their proofs of claim.

31

Lenders' feasibility argument and the statute's payment requirement must be evaluated in the context of bankruptcy law.  Unsecured creditors in bankruptcy cases often receive less than 100% dividends on their unsecured claims.  Does a co-tort-feasor obtain a windfall from the fact that a debtor may pay less than a 100% cash dividend on outstanding claims?

The general principle that must be followed in bankruptcy is that allowance of a claim entitles the claimant to a proportionate share of the dividends from the case.  The allowance of a right to proportional sharing is the state law equivalent of "payment."  Mathematics helps to explain why.  Assume two scenarios:

|  | Scenario "A" | Scenario "B" |
|---|---|---|
| Total Claims Against Bankruptcy Estate[21] | $100,000 | $100,000 |
| Total Distributable Cash on Hand | $60,000 | $65,000 |
| Application of Defendant's Theory of Contribution Claims against Co-Wrongdoer | $0.00 | $40,000 |
| Proportionate Responsibility of Wrongdoer | 40% | 40% |

At first blush, the $40,000 set forth above appears to be mathematically incorrect.  But that apparent incorrectness is the nub of the defendants' error.  Under the Lender's theory, the payment of the $65,000 would be a payment of $5,000 more than the Debtor's proportionate share of liability.  Under their theory, the Lenders would be required to pay the $5,000 to the Debtor.  However, because of the operation of the distribution scheme under the Bankruptcy Code, the Debtor would take that additional $5,000 and distribute it back to the claimant (who still holds a $35,000 unpaid claim).  When the additional $5,000 is distributed, then the Debtor

---

[21] For the sake of mathematical simplicity, this example assumes all claims against the estate are claims for which 40% proportionate responsibility may be assigned to the wrongdoer.

would have paid a total of $70,000.  However, the Lenders would have only paid contribution of $5,000.  Accordingly, an additional $5,000 would be owed. This circle would continue until the Lenders had paid a total of $40,000.  The following chart exemplifies:

| Claimant is Owed | Debtor Pays from Initial Funds | Debtor Pays from Funds Received From Lenders | Total Paid to Date by Debtor | Total Paid to Date by Lenders | Claimant Owed Following Distribution | Contribution Claim Received from Lenders |
|---|---|---|---|---|---|---|
| $100,000.00 | $65,000.00 | $0.00 | $65,000.00 | $0.00 | $35,000.00 | $5,000.00 |
| $35,000.00 | $0.00 | $5,000.00 | $70,000.00 | $5,000.00 | $30,000.00 | $5,000.00 |
| $30,000.00 | $0.00 | $5,000.00 | $75,000.00 | $10,000.00 | $25,000.00 | $5,000.00 |
| $25,000.00 | $0.00 | $5,000.00 | $80,000.00 | $15,000.00 | $20,000.00 | $5,000.00 |
| $20,000.00 | $0.00 | $5,000.00 | $85,000.00 | $20,000.00 | $15,000.00 | $5,000.00 |
| $15,000.00 | $0.00 | $5,000.00 | $90,000.00 | $25,000.00 | $10,000.00 | $5,000.00 |
| $10,000.00 | $0.00 | $5,000.00 | $95,000.00 | $30,000.00 | $5,000.00 | $5,000.00 |
| $5,000.00 | $0.00 | $5,000.00 | $100,000.00 | $35,000.00 | $0.00 | $5,000.00 |
| | | | | | | $40,000.00 |

The defendants' theory—when applied—would trigger 100% of their proportionate liability if the debtor paid one cent of the claimants' claims above debtor's proportionate share—but would trigger 0% of their proportionate liability if no cents were paid.  This "no cents" arrangement makes no sense.

In a bankruptcy case, "payment" does not necessarily mean payment in cash.  "Payment" in a bankruptcy scenario is payment in kind by the allowance of a claim that entitles the claimant to a proportionate share of assets.  Any other result makes a mockery of the Texas Proportionate Responsibility Statute and would encourage wrongdoers to assure that assets were drained from an estate prior to bankruptcy such that no payment in cash would be available.

The Court rejects the Lenders' "cash payment" theory.  Moreover, even if the "cash payment" theory were ultimately proven correct, it would not entitle Lender's to a preemptive dismissal of the case.  The estate might distribute at least one penny in excess of its proportionate share to at least one claimant.

### vii. Ancillary Matters

#### a. 51% Liability

Some Lenders have suggested that a liable defendant whose proportionate responsibility is greater than 50% can not recover contribution. Lenders rely on § 33.001. That section provides that a "claimant may not recover damages if his percentage of responsibility is greater than 50 percent." § 33.001.

However, Today's Destiny is not a "claimant." Today's Destiny is a "liable defendant" seeking contribution from a "contribution defendant" based on claims asserted by the *claimant* Customers. §§ 33.011(3); 33.016(a). Lenders misconstrue the intent of § 33.001. The provision embodies Texas's modified comparative fault system in which a plaintiff who is more than 50% responsible for his injuries can not recover for his injuries.

The statute expressly provides contribution rights to defendants whose proportionate responsibility exceeds 50%. Under § 33.013(b), a defendant can be found jointly and severally liable if the defendant's proportionate responsibility *exceeds* 50%. § 33.013(b). Section 33.015 then gives the jointly and severally liable defendant a right to contribution though their proportionate responsibility exceeds 50%. § 33.015(a) and (b). Other Lenders have admitted that any Lender argument based on § 33.001 is misplaced. The Court agrees.[22]

#### b. GE Capital

Defendant Lender GE Capital ("GE") notes that no Customers that have filed proofs of claim received loans from GE. No one receiving a loan held by GE has sought to intervene. GE did purchase five loans originally made by other lenders. However, the Trustee's remaining claims against Lenders are based on an alleged fraudulent scheme the original lenders participated in. GE can not be held liable for contribution based on conduct that GE did not

---

[22] The Court also notes that there has not yet been a determination of proportionate responsibility.

participate in.  Because no GE customers have filed proofs of claim or intervened in Today's

Destiny's bankruptcy estate, and GE did not participate in the lending at issue, the Trustee has no

basis for asserting a contribution claim against Today's Destiny.  The contribution claims against

GE are dismissed.

### c. Forum and Choice-of-Law Provisions

Certain Lenders' leases contained choice-of-law and forum-selection provisions.  For

example, Lender Greater Bay Capital's leases contain a provision stating: "This lease shall be

governed by the laws of Illinois.  Any legal action concerning this lease shall be brought in a

court located in Lake County, Illinois . . ."

Contribution claims are derivative of a plaintiff's ability to assert a claim against the

defendant from whom contribution is sought. *Segrestrom*, 247 F.3d at 214. Certain Lenders rely

upon this principal to contend that the Trustee's contribution claims are subject to the law and

courts of the state provided in the forum-selection clauses.

The Court rejects the argument.  The Court does not interpret the derivative principal as

imputing all aspects of Customers' claims upon the Trustee's distinct contribution claim.  Under

the derivative principal, a Trustee can not assert a contribution claim if the injured party could

not assert a claim against the party against whom the Trustee is seeking contribution.

Consequently, if the injured party's claim was dismissed, subject to res judicata, or otherwise

defeated by an affirmative defense, the Trustee could not assert a contribution claim. *Shoemake*

*v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex. 1992). The forum and choice-of-law provisions do not

create an affirmative defense or otherwise preclude the Customers from asserting a claim against

the Lenders.  Though the contribution claim is derivative of the Customer's ability to assert a claim

against Lenders, the Court fails to see how the derivate nature of the claim imposes the forum

and choice-of-law provisions on the Trustee.

The leases were signed by the Customers, not the Trustee or Today's Destiny. The Trustee is not asserting the Customer's claims. The Trustee's contribution claim and the Customer's direct claim against Lenders are *distinct* claims. A party seeking contribution is not seeking relief on the injured party's behalf. The party seeking contribution is not otherwise asserting the injured party's claim. Indeed, the party seeking contribution generally can not assert the injured party's claim. Nor can an injured party assert a liable defendant's contribution claim. The derivate nature of a contribution claim does not merge the distinct claims held by the injured party and the party seeking contribution. The choice-of-law and forum clause apply only to Customer's direct claims.

The Court denies Lenders' Motions to Dismiss based on the choice-of-law and forum-selection lease provisions.

## C. Abstention

Defendants Motions to Dismiss were drafted prior to the Court's Intervention Opinion. The abstention arguments were largely focused on causes of action the Trustee sought to assert on the Intervenor's behalf. The Court's Intervention Opinion mooted these arguments. However, two abstention issues remain. The Court must consider whether to abstain from considering the Trustee's remaining contribution and aiding and abetting breach of fiduciary duty claims, and claims the Intervenors may assert on their own behalf.

Abstention issues with respect to the Intervenors are not ripe for consideration. No Intervenor has yet filed a complaint in this adversary proceeding. Defendants' Motions to Dismiss were based on the assumption that the Trustee, not the Intervenors, would be asserting claims owned by the Intervenors. Intervenors have not had the opportunity to respond to

abstention concerns with respect to claims they may seek to assert.  Pursuant to this Opinion, the

Court is setting a deadline for Intervenors to file complaints.  The Court will consider abstention

issues with respect to claims asserted by Intervenors when, and if, Intervenors file complaints

and defendants have had the opportunity to respond.

The Court will consider abstention with respect to the Trustee's two remaining claims in

this Memorandum Opinion.

### i. Mandatory Abstention

Title 28 U.S.C. § 1334(c)(2) provides for mandatory abstention when:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law
> cause of action, related to a case under title 11 but not arising under title 11 or arising in a
> case under title 11, with respect to which an action could not have been commenced in a
> court of the United States absent jurisdiction under this section, the district court shall
> abstain from hearing such proceeding if an action is commenced, and can be timely
> adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

The Fifth Circuit has interpreted this provision to mandate abstention where:

> (1) [t]he claim has no independent basis for federal jurisdiction, other than § 1334(b); (2)
> the claim is a non-core proceeding, i.e., it is related or in a case under title 11; (3) an
> action has been commenced in state court; and (4) the action could be adjudicated timely
> in state court.

*Edge Petroleum Operating Co., Inc. v. GRP Holdings et al. (In re TXNB Internal Case)*, 483

F.3d 292, 300 (5th Cir. 2007) (quoting *Schuster v. Mims (In re Rupp & Bowman)*, 109 F.3d 237,

239 (5th Cir. 1997)).

The Trustee's claims are not subject to mandatory abstention.  The Trustee has not

asserted the claims in state court.  The Fifth Circuit's third factor is absent.

### ii. Permissive Abstention

Title 28 U.S.C. § 1334(c)(1) provides for permissive abstention.  Section 1334(c)(1)

provides:

> [N]othing in this section prevents a district in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

Bankruptcy Courts have wide latitude in determining whether to remand a state law cause of action.  The Fifth Circuit has held that under 28 U.S.C. § 1334(c)(1) the court has "broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the interest of comity with State courts or respect for State law." *In re Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996).

In determining whether discretionary abstention or equitable remand is appropriate, Courts have developed a list of nonexclusive factors, including:

> (1) the effect or lack thereof on the efficient administration of the estate;
> (2) extent to which state law issues predominate over bankruptcy issues;
> (3) difficult or unsettled nature of applicable law;
> (4) presence of related proceeding commenced in state court or other non-bankruptcy proceeding;
> (5) jurisdictional basis, if any, other than § 1334;
> (6) degree of relatedness or remoteness of proceeding to main bankruptcy case;
> (7) the substance rather than the form of an asserted core proceeding;
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden of the bankruptcy court's docket;
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
> (11) the existence of a right to a jury trial;
> (12) the presence in the proceeding of nondebtor parties;
> (13) comity; and
> (14) the possibility of prejudice to other parties in the action.

*J.T. Thorpe Co. v. Am. Motorists*, No. H-02-4598, 2003 WL 23323005 (S.D. Tex. June 6, 2003) (citing *Beasley v. Pers. Fin. Corp.*, 279 B.R. 523, 533 (S.D. Miss. 2002)). *See also In re Encompass Servs. Corp.*, 337 B.R. 864, 878 (Bankr. S.D. Tex. 2006).

The Court will not exercise permissive abstention with respect to the Trustee's claims. The permissive abstention factors overwhelmingly support this Court's continued jurisdiction over these claims.

The efficient administration of the estate factor weighs heavily against permissive abstention.  The Trustee has asserted contribution claims against approximately 20 Lenders. Instituting a separate lawsuit against each Lender in various forums would be a substantial burden to the Trustee, the debtor, creditors, and the Court.

Lenders primarily argue that the Trustee's claims: (i) are state law cause of action; (ii) interfere with the Lenders' forum selection clauses; (iii) will have little impact on the administration of the estate; and (iv) the Trustee is "forum shopping" in the sense that he's seeking to litigate all claims within the bankruptcy Court rather than assert the contribution claim in each individual Customer's actual or future state court lawsuit.[23]

The Court rejects Lenders' contentions.  Though the Trustee's contribution claim arises under state law, the state law nature of the claim is only one factor and, alone, insufficient to justify abstention.  Moreover, the complexities of a state law proportionate payment scheme with the partial distribution likely in a bankruptcy case, make a bankruptcy court uniquely qualified to address the complex bankruptcy questions that are raised.  The forum selection clause argument is inapplicable: neither the Trustee nor Today's Destiny was a party to the agreements with the Lenders' that contained the forum selection clauses.  The contribution claim may have a substantial impact on the estate.  Even if Lenders' proportional responsibility is minimal, the

---

[23] Some Lenders have stated that the Court should abstain to preserve their 7th Amendment jury trial rights. Assuming Lenders are entitled to a jury trial, issues for the jury have not yet been framed. Pursuant to this Opinion, the Trustee will file an Amended Complaint. Rule 9 motions must still be considered.  Summary Judgment Motions have not yet been considered.  Issues of law remain.  The Court need not abstain based on a jury demand when legal issues remain. *McFarland v. Leyh*, 52 F.3d 1330, 1339 (5th Cir. 1995) ("No right to a jury trial arises if no jury issue is presented to the court"); *King v. Fidelity Nat. Bank of Baton Rouge*, 712 F.2d 188, 192–93  (5th Cir. 1983); *Hayes v. Royala, Inc.*, 180 B.R. 476, 477 (E.D. Tex. 1995)

estate's recovery will be significant considering that the Customers' proofs of claims are in excess of $11 million.  The Trustee is not "forum shopping." The Trustee filed the contribution claims in this Court because the bankruptcy case from which the contribution claims arise was filed in this Court.  Asserting the contribution claims on behalf of the state in a single bankruptcy Court is an exercise of administrative efficiency, not "forum-shopping."

### *Conclusion*

Based on the foregoing, the Court will issue separate orders accomplishing the following:

● Defendants' Motions to Dismiss with respect to the *in pari delicto* claim will be denied.

● Defendants' Motions to Dismiss with respect to the contribution claim will be denied.

● Defendants' Motions to Dismiss with respect to abstention from jurisdiction over claims Intervenors' may assert on their own behalf will be denied.

● Defendants' Motions to Dismiss with respect to abstention from jurisdiction over the Trustee's claims will be denied.

● Defendants' Motions to Dismiss the following claims will be granted: (i) A portion of the Breach of Fiduciary Duties claim against Michael Day, Max K. Day, Max O. Day, Chaz Robertson, Joshua Smith, and Terry Vanderpool; (ii) a portion of the claim for Aiding and Abetting Breach of Fiduciary Duties against Jared Day and the Lenders; (iii) Fraud and Fraudulent Inducement against Max K. Day, Michael Day, Max O. Day, Chaz Robertson, Jared Day, Joshua Smith, and Terry Vanderpool; (iv) Conspiracy to Defraud and to Breach Fiduciary Duties against Michael Day, Max O. Day, Max K. Day, Chaz Robertson, Joshua Smith, Terry Vanderpool, and the Lenders; (v) rescission against Lenders; (vi) violations of the Texas Deceptive Trade Practices - Consumer Protection Act against Lenders; (vii) a portion of certain additional claims against Sterling National Bank for Aiding and Abetting Breach of Fiduciary Duties and  Fraud; and (viii) Request for Declaratory Judgment against Lenders.

● The Trustee will be ordered to file an amended complaint by May 26, 2008.  Responses will be due on June 16, 2008.  Defendants will be authorized to assert any Rule 8, 9, 12(e), or 12(f) objections that are unresolved by the Trustee's amended complaint.

● Any Lender or other "party in interest" will be authorized to object to proofs of claim filed in Today's Destiny's bankruptcy estate.  The Court will require any such objections to be filed by May 12, 2008.  Failure to object to a proof of claim will not estop any interested party from contesting its proportionate responsibility or personal liability arising from Today's Destiny's liability on the proof of claim.

● Pursuant to paragraph 5 of the Court's July 6, 2007 Order on Motions to Intervene, subject to the rulings of this April 11, 2008 Memorandum Opinion, and filed statements of settlement, the Court will authorize intervention in this adversary proceeding of certain parties listed in "Exhibit C" of the Court's July 6, 2007 Opinion.  Intervenors who have settled with Lenders will not be permitted to intervene with respect to Lenders.

● Parties granted intervention pursuant to the Court's Memorandum Opinion on Intervention and who wish to assert causes of action in this adversary proceeding will be required to file a complaint by May 12, 2008.  Defendants will be required to respond by June 2, 2008 and may assert any applicable defense.

● HPSC Inc.'s Motion for Reconsideration (docket no. 397) will be denied.

● Sterling National Bank's Motions for Reconsideration (docket no. 398 and 414) will be denied.

● AEL's Objection (docket no. 413) will be granted.

● GE's Motion to Dismiss (docket no. 396) will be granted.

Signed at Houston, Texas, on April 11, 2008.

MARVIN ISGUR
United States Bankruptcy Judge