

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**05/01/2009**

| | | |
|---|---|---|
| IN RE: | § | |
| TODAY'S DESTINY, INC. | § | CASE NO: 05-90080 |
| Debtor(s) | § | |
| | § | CHAPTER  7 |
| | § | |
| JOSEPH M. HILL | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3285 |
| | § | |
| MICHAEL DAY, *et al* | § | |
| Defendant(s) | § | |

<u>**MEMORANDUM OPINION ON**</u>
<u>**MOTIONS TO DISMISS TRUSTEE'S COMPLAINT**</u>

**Factual Background**

On October 13, 2005, Today's Destiny, Inc. ("Debtor") filed a chapter 7 bankruptcy petition.  Debtor was in the business of selling "predictive dialing equipment" to dentists and chiropractors ("Customers").  Predictive dialing equipment is designed to increase the efficiency of telemarketers by connecting marketing agents only to "live" persons rather than unanswered phones, voice mail, or answering machines.  Various financial institutions ("Lenders")[1]  financed the equipment sales and leases by entering into agreements with Customers.

Customers filed over 300 proofs of claim for damages arising from the sales and leases.  Customers largely contend that Debtor sold them worthless equipment at prices of $18,000.00-80,000.00.  As of October 29, 2008, Customers' proofs of claim totaled over $20,000,000.00.

---

[1] The term "Lenders" refers to financial institutions, other lenders, and leasing companies, as used in the Court's July 6, 2007 Memorandum Opinion on Motions to Intervene and Order.

## Procedural Background

On March 21, 2006, the chapter 7 Trustee filed an adversary proceeding against Debtor's principals ("Insiders")[2] and Lenders.  The Trustee contends that Debtor and Lenders defrauded Customers through the fraudulent sale and leasing of the predictive dialing equipment.  Debtor's principals and Lenders deny the allegations.

During February through April of 2007, Insiders and Lenders ("Defendants") filed Motions to Dismiss, Motions for More Definite Statement, and Motions to Abstain with respect to the Trustee's complaint.  The majority of Defendants' motions have been resolved by separate Memorandum Opinions on July 6, 2007, and April 11, 2008.

The July 6 Opinion determined whether certain Customers seeking to intervene in this adversary ("Intervenors") could intervene under the Federal Rules of Bankruptcy Procedure, which claims asserted by the Trustee were owned by the estate and which claims were owned by putative Intervenors. *In re Today's Destiny, Inc.*, 2007 WL 2028111 (Bankr. S.D. Tex. July 6, 2007). The Court found that Intervenors' claims shared a sufficient commonality with the Trustee's claims and therefore authorized intervention under Rule 7024. *Id*. The Court's Opinion also included a chart categorizing which claims were owned by the Today's Destiny's estate and which were owned by Intervenors. *Id*.

The April 11, 2008, Opinion resolved issues regarding *in pari delicto*, contribution under the Texas Civil Practice and Remedies Code, and abstention. *In re Today's Destiny, Inc.*, 388 B.R. 737 (Bankr. S.D. Tex. 2008). An essential holding of the April 11 Opinion was that the Trustee's contribution claim could only be sustained if Today's Destiny's liability could become

---

[2] The "Insiders" include: Michael Day, president, chief executive officer and chairman of the board; Max K. Day, senior vice president and chief operating officer; Max O. Day, vice president; Chaz Robertson, vice president of sales; Joshua Smith, vice president of operations; Jared Day, the "closer" in sales and; Terry Vanderpool, General Counsel.  On July 12, 2007, a default judgment was entered against Chaz Robertson and Joshua Smith.

fixed.  Accordingly, the Court issued deadlines for filing objections to Customers' proofs of claim.  Lenders objected to nearly all of the more than 300 proofs of claim.

On November 26, 2008, the Court issued a Memorandum Opinion resolving most of the claim objections.  Subsequently, the parties filed a joint motion to extend pending deadlines to afford the parties the opportunity to mediate.  On December 11, 2008, the Court issued an Order that abated the bankruptcy case and the adversary proceeding until the conclusion of the parties' mediation.  On March 9, 2009, the parties informed the Court that approximately half of the Lenders settled with the Trustee and Intervenors.[3]  On April 27, 2009, the Court issued an order approving the settlements.

### Scope of this Memorandum Opinion

The prior Opinions did not consider Lender and Insiders' arguments based on Rules 8, 9, and 12(e).  A prior scheduling order bifurcated consideration of the Rule 8, 9, and 12(e) issues from the issues addressed in the April 11 Opinion.  Pursuant to the April 11 Opinion, the Court issued an Order requiring the Trustee to file an amended complaint and gave Defendants the opportunity to re-urge their Rule 8, 9, and 12 arguments to the extent that the amended complaint did not correct alleged pleading deficiencies. The Court now resolves these issues.[4]

### Summary of Arguments

The Trustee's Third Amended Complaint asserts four clams against Lenders: aiding and abetting breach of fiduciary duty, conspiracy, contribution, and indemnity.   The amended complaint asserts three principal claims against Insiders: breach of fiduciary duties, denuding the

---

[3] The Court does not consider motions to dismiss filed by Lenders who are parties to the settlement approved on April 27, 2009.  They are no longer parties to this adversary and lack standing.

[4] The Order accompanying the April 11 Opinion also required any Customer who wished to assert claims on their own behalf ("Intervenors") to file an original complaint consistent with the April 11 Opinion.  The Court  resolves pending motions to dismiss with respect to the Intervenors' complaint in a separate Memorandum Opinion.

corporation, and conspiracy.  All claims against Lenders and Insiders arise from the same alleged fraudulent conduct: Today's Destiny's alleged scheme to defraud Customers by misrepresenting the value and capabilities of the predictive dialing equipment.  Lenders allegedly aided and abetted the fraudulent sale of the predictive dialing equipment by financing Customers' purchases of the equipment.

Defendants' Rule 8, 9, and 12(e) arguments assert that the Trustee has not pled the alleged fraudulent scheme with the required particularity.  Lenders contend that the "who, what, when, where, and how" of the fraud was not specified with sufficient detail.  The Court denies Defendants' motions.  The complaint's allegations adequately give Defendants fair notice of the claims they must defend against.  The complaint includes numerous specific facts relating to each element of the alleged fraud.  The Trustee also attached to the complaint hundreds of statements from Customers describing the alleged fraudulent scheme and Lenders' and Insiders' participation in the scheme.

Lenders argue that the complaint is defective because it does not attach specific allegations of conduct to each Lender, and that such individualized pleading is required by the Rules of Civil Procedure given the nature of the allegations.  The Lenders miss the point.  The alleged fraud is described with all of the who, what, when, where and how that is required by Rule 9 and the Lenders do not raise any serious issues about the adequacy of the pleading of the underlying alleged fraud.  The issue raised by the Lenders is whether each Lender is individually linked to the fraud.

The complaint only alleges a single act by each Lender that furthers the fraud—the act of providing funds.  As to that act, there is sufficient specificity with respect to each Customer.  The balance of the allegations against the Lenders pertain to whether Lenders knew that their acts of

providing funds were in furtherance of the fraud. Although it is certainly the case that the complaint does not provide a Rule 9 level of detail about such Lender knowledge, Rule 9 provides that "knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9.[5] As set forth below, the complaint provides substantial Rule 8 factual allegations that allow reasonable inferences to be drawn with respect to Lenders' knowledge

This Memorandum Opinion makes no findings as to the merits of any of the Trustee's claims. Whether there is evidence of the Trustee's claims and whether the Trustee can succeed on his claims are separate questions from whether the Trustee has pled claims in sufficient detail to give Defendants fair Rule 9 notice of the allegations they must defend. The latter question is the only question the Court considers in this Memorandum Opinion.

## Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O). Venue is proper in this District pursuant to 28 U.S.C. § 1409.

## Analysis of Rule 9(b) Arguments

The Court sets forth the requirement of Rule 9(b) and then applies those requirements to the Trustee's fraud-related claims against Insiders and Lenders.

### i. Rule 9(b)

Rule 9(b) requires the circumstances constituting fraud to be pled with "particularity." FED. R. CIV. PROC. 9(B); FED. R. BANKR. PROC. 7009. Under Rule 9's particularity requirement, the party asserting the fraud claim must allege "the existence of acts and circumstances sufficient to warrant the pleaded conclusion that fraud ha[s] occurred." *In re Haber Oil Co.*, 12 F.3d 426,

---

[5] Federal Rules of Bankruptcy Procedure 7008, 7009, and 7012 incorporate Rules 8, 9, and 12 of the Federal Rules of Civil Procedure within adversary proceedings filed in bankruptcy courts. Accordingly, the Court refers to Federal Bankruptcy Rules and Rules of the Federal Rules of Civil Procedure interchangeably.

439 (5th Cir. 1994) (citing *Askanase v. Fatjo*, 148 F.R.D. 570, 574 (S.D. Tex. 1993); *see also Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 ("the Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent"). "At a minimum, [Rule 9] requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). The defendant's state of mind, however, may be generally averred. *See e.g. Collmer v. U.S. Liquids, Inc.*, 268 F. Supp. 2d 718, 723 (S.D. Tex. 2003).

Rule 9(b)'s application is not limited to pure fraud claims.  Rather, Rule 9(b) applies to any averment of fraud within a claim that has a fraud-based element. *Lone Star Ladies Inc. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368–69 (5th Cir. 2001); *In re Am. Intern Refinery* --- B.R. ---, 2008 WL 2116411 *5 (Bankr. W.D. La. May 19, 2008); *In re Sharp Intern Corp.*, 302 B.R. 760, 770 (E.D. N.Y. 2003) ("Furthermore, to the extent the underlying breaches of fiduciary duty are based on fraudulent conduct, the complaint must meet the heightened pleading requirements of Rule 9(b) . . .").

Rule 9(b)'s application is flexible and influenced by the circumstances of the case. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). Pursuant to Rule 8(e), the Court must construe the pleadings "to do justice." *Williams*, 112 F.3d at 178. Though Rule 9(b) requires parties asserting fraud claims to provide more specific allegations than that required of other claims, the Rule does not require plaintiffs to assert every fact they will attempt to prove at trial.  Rule 9(b) must be "read in connection with Fed. R. Civ. P. 8 which requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 430 (5th Cir. 1990) (citing *Ross v. A.H. Robins*

*Co.*, 607 F.2d 545, 557 n. 20 (2d Cir. 1979)); *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

### ii. The Fraud Pleading

The Court finds that the Trustee's Third Amended Complaint more than adequately asserts the who, when, where, and how of the alleged fraud. The Trustee's complaint spends over 20 pages detailing the scheme. The complaint also includes numerous exhibits, including Today's Destiny's promotional material, invoices, contracts, a statement by a former Today's Destiny employee, and over 300 statements from Customers that describe the fraud. The Court summarizes the Trustee's allegations as follows:

Max K. Day and his brother Michael Day formed Today's Destiny in 1997 and continued its operations into 2005. They brought on defendants Max O. Day, Chaz Robertson, Joshua Smith, and Terry Vanderpool to serve in high-level positions (the "Insiders"). Today's Destiny also operated under the names The Next Generation Inc., The Next Generation Systems, Interactive Business Development, Inc., Interactive Business Development Marketing, Inc., and Medicus Marketing. Today's Destiny marketed "predictive dialing equipment" to medical professionals, namely chiropractors and dentists. The equipment was essentially an automated telemarketing system designed to call potential customers and play a recorded message. The equipment included basic computer and software components. Though located in Houston, Today's Destiny solicited Customers nationwide through journal and magazine advertising and cold calls. The equipment was sold to over 900 Customers.

Today's Destiny and Insiders made numerous misrepresentations regarding the value and nature of the equipment and services when soliciting sales. Today's Destiny and Insiders made guarantees, including a guarantee of $60,000.00 of revenue in the first two weeks of use.

Today's Destiny and Insiders promised marketing coaching and services with the equipment. Advertisements included testimonials purporting to be from doctors who had used the equipment. The picture accompanying some testimonials was a picture of Max K. Day. Other persons giving positive references were paid a monthly fee to make favorable statements.

Today's Destiny's agents used various delay tactics and false representations to rush Customers into signing agreements without examining the documents. Defendants sold the units for $18,000.00 to $80,000.00. Today's Destiny's cost for the equipment was less than $2,000.00 per unit. The promises and guarantees were illusory. The equipment did not work as advertised if it worked at all. The promised marketing services were not provided. The sales contracts contained impossible "minimum operating requirements" that Customers had to meet before the guarantee would be honored. If the allegations are proven to be true, Plaintiffs were sold shoddy equipment for vastly inflated amounts.

Non-Lender Defendants negotiated agreements with Lenders to provide financing for the equipment purchases. Though some Lenders dealt with Intervenors directly after being referred by Today's Destiny representatives, most Intervenors provided the financing documents to Today's Destiny whose agents in turn provided it to Intervenors. Non-settling Intervenors remain obligated to make payments pursuant to their financing agreement.

Based on the Trustee's pleading, the Court denies Insiders' and Lenders' contention that fraud was not pled with sufficient particularity. The who, what, when, where, and how of the alleged fraudulent scheme are all pled with detail. The issue of whether the Trustee's breach of fiduciary dutiy and aiding and abetting allegations are also pled with sufficient particularity is examined below.

### iii. Fraud-Based Claims against Insiders

#### a. Breach of Fiduciary Duty Claims

Michael, Max K. and Max O. day allege that the complaint does not plead breach of fiduciary claims against them with sufficient particularity.  The Court denies Insiders' argument.  The breach of fiduciary duty claims are based on Insiders' participation in the fraudulent scheme described above.  The fraudulent scheme was pled with sufficient particularity.  In addition, the complaint adequately describes Michael Day, Max K. Day, and Max O. Day's participation in the scheme with sufficient particularity.  Michael Day and Max Day are described as the founders and executives in charge of Today's Destiny and related entities.  Numerous false representations are attributed to them.  Michael Day and Max Day are also alleged to have transferred assets out of Today's Destiny to related entities.  Max. O. Day is described as a "closer" responsible for pressuring Customers into executing contracts with Today's Destiny and Lenders.  Max Day is also alleged to have used an alias to disguise Medicus Marketing and Interactive Business Development's relationship to Today's Destiny.  All are alleged to have directed some Customers to Lenders and alleged that Lenders were a financing arm of Today's Destiny.  All are alleged to have made false representations regarding the nature of the equipment.  The complaint summarizes statements made by Customers regarding misrepresentations made by Michael Day, Max K. Day, and Max O. Day.

Accordingly, the Court denies Insiders' motions with respect to the breach of fiduciary duty claim.

#### b. Denuding and Alter Ego Claims

Insiders also argue that the denuding and alter ego, or sham to perpetrate a fraud claims were not adequately pled.  Insiders noted that the denuding and alter ego claims are derivative of

the underlying fraud pleadings.  Because the fraud scheme was not pled with the required particularity, Insiders contend that the derivate claims must also be dismissed.  Because the Court finds that the Trustee's complaint adequately pleads fraud, the Court rejects these arguments.

The Court also notes that the complaint adequately pleads denuding and alter ego claims. With respect to the denuding claim, the complaint specifically states that certain Insiders controlled Today's Destiny and used their control to transfer assets out of Today's Destiny for their benefit.  The complaint further states that Today's Destiny earned gross revenue exceeding $10,000,000.00 yet listed almost no assets in its bankruptcy schedules.

With respect to the alter ego or sham to perpetrate a fraud claims, the complaint alleges that Today's Destiny was owned by three Insiders and used by the Insiders to commit fraud for the Insider's financial benefit.  The Texas Business and Commercial Code provides for liability under alter ego and sham to perpetrate a fraud theories when an owner "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, owner, subscriber, or affiliate." Tex. Bus. Corp. Act. Ann. art. 2.21 (West. Supp. 1992); *Fidelity & Deposit Co. of Maryland v. Commercial Cas. Consultants, Inc.*, 976 F.2d 272, 274–75 (5th Cir. 1992). The Trustee's complaint sufficiently pleads alter ego and sham to perpetrate a fraud claims.

### c. Aiding and Abetting Claim against Jared Day

Insider Jared Day alleges that the aiding and abetting claim is not sufficiently pled with respect to him.  The complaint specifically states that Jared Day was the "closer" who presented the leasing documents to Customers and acquired Customer's signatures.  The attached statement of Mr. Fleenor also states that Jared Day was one of two individuals who installed the equipment

and presented the financing documents.  Paragraphs 60-61 of the Third Amended Complaint details how the equipment installers pressured Customers into signing the documents before they could be fully read.  The Court finds that the complaint adequately pleads the aiding and abetting claim against Jared Day.

### d. Legal Malpractice and Breach of Fiduciary Duty Claims against Terry Vanderpool

With respect to Terry Vanderpool, the Trustee asserted legal malpractice and breach of fiduciary duty claims.  The Court finds that these claims were pled in accordance with Rules 8, 9, and 12's requirements.  To support the claims, the Trustee alleges that Vanderpool was Today's Destiny's general counsel, attended weekly Insider meetings, drafted Today's Destiny's contracts, advised Today's Destiny on how to avoid honoring guarantees, and made false representations to Customers.  As general counsel and one intimately involved in Today's Destiny's business operations, the Court infers that he drafted the contracts and undertook other actions with full knowledge of the alleged fraud.  The allegations that Vanderpool drafted contracts with the intention that they would be used to carry out a fraudulent scheme are sufficient to sustain the malpractice, and breach of fiduciary duty claims.

### iv. Fraud-Based Claims against Lenders

#### a. Aiding and Abetting Claims

"A plaintiff seeking to establish a cause of action for aiding and abetting a breach of fiduciary duty must show: '(1) the existence of a . . . violation by the primary (opposed to the aiding and abetting) party; (2) "knowledge" of this violation on the part of the aider and abettor; and (3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.'" *Samuel M. Feinberg Testamentary Trust v. Carter*, 652 F. Supp. 1066, 1082 (S.D.N.Y. 1987) (quoting *ITT v. Cornfeld*, 619 F.2d 909, 922 (2d Cir. 1980); *Terrydale*

*Liquidating Trust v. Barness*, 611 F.Supp. 1006, 1027 (S.D.N.Y. 1984). *See also Brewer v. Pritchard, P.C. v. Johnson*, 7 S.W.3d 862, 867 (Tex. App.—Houston 1999, pet. granted) (citing *Kinzback Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 515 (Tex. 1942)).

The Trustee's Third Amended Complaint pleads Lenders' substantial involvement and knowledge in detail. The Trustee's allegations with respect to Lenders' participation can be summarized as follows:

Customers financed their purchase of the equipment through financing agreements with Lenders. Today's Destiny and Lenders had "Master Operating Agreements" that defined their relationship. Under the Master Operating Agreements, Today's Destiny agreed to direct Customers to Lenders and Lenders agreed to finance the purchase. Though some Lenders dealt with Customers directly after being referred by Today's Destiny representatives, most Lenders provided the financing documents to Today's Destiny whose agents in turn provided the documents to Customers. Most financing documents did not include a price for the equipment or services. Rather, Lenders left it to Today's Destiny's representatives to determine the price. When a Today's Destiny agent came to a Customer's place of business to install the equipment, the agent presented a pre-arranged financing agreement that Customers were required to sign before the equipment would be installed. Lenders paid Today's Destiny a "commission" for each lease agreement.

Most financing documents characterized the transaction as a 60-month "lease." Despite the characterization as leases, the financing documents were actually true sales of the equipment. After it became clear that the equipment did not work as advertised, Lenders still required Customers to make payments pursuant to their financing agreements.

Paragraph 74 of the complaint makes the following specific allegations with respect to Lenders' knowledge:

▪ In all instances, the Lenders knew that the amount of money to be lent to the Today's Destiny Customers had no relation whatsoever to the value of the equipment. They knew that the "equipment" was a low-grade personal computer with the typical accessories (monitor, keyboard, mouse, speakers) and basic software (Microsoft Office, PC Anywhere).

▪ Allegedly, the 'equipment' also contained TNG's proprietary marketing software.

▪ In all instances, the Lenders knew that Today's Destiny charged some of its Customers dramatically more for the 'System' and 'Program' than it charged others; in other words, the Lenders knew that Today's Destiny was charging each Customer what it thought it could exact from that Customer, without regard for the value of the equipment or services to be rendered.  When two leases were sold for identical pieces of equipment and software, the Lenders knew or should have known that Today's Destiny was engaged in fraudulent activity.

▪ When equipment that was purchased for less than $2,000 was leased to a Customer for between $18,000 and $80,000, the Lenders knew or should have known that Today's Destiny was engaged in fraudulent activity.

▪ The Lenders did not inspect the equipment to ensure that it was as represented.  They failed to conduct basic due diligence because they knew or suspect that Today's Destiny was an illegitimate shame to perpetrate a fraud on the unsuspecting Customers.

▪ When the Customers called the Lenders to complain that Today's Destiny had failed to deliver the promised goods and services, the Lenders turned a deaf ear—insisting on payments and continuing to lend money to new Customers notwithstanding their awareness that Today's Destiny was not delivering a reliable product or service.

▪ When the Customers started to default on their payments and refused to pay, the Lenders turned another deaf ear—insisting on payments and continuing to lend money to new Customers notwithstanding their awareness that Today's Destiny was not delivering a reliable product or service.

▪ The Lenders were aware of Today's Destiny's shift of the business to Medicus Marketing and IBD following the federal government's institution of the "No Call List," just as they were aware of Today's Destiny's attempts to create the appearance that IBD and Medicus Marketing were new entities unrelated to Today's Destiny, whose reputation for failing to make good on its promises was growning.

▪ The Lenders were knowingly financing the "Systems" or "Program" in jurisdictions where such automated telemarketing was illegal, such as California and Louisiana.

13

Though some of the Trustee's allegations do not appear relevant to the knowledge element (for example, the allegation that the equipment used TNG's proprietary marketing software), the balance of the allegations create a strong inference that Lenders had knowledge of the fraudulent scheme. The Trustee's relevant specific allegations with respect to Lenders' knowledge can be summarized as follows. Lenders had direct knowledge of the fraud as evidenced by knowledge of the following: the wide gap between the true value of the equipment and the sales price; the wide range of sales prices obtained for the same equipment and services; numerous Customer complaints and payment defaults; Today's Destiny's use of different entities to sell the same product; a 1992 lawsuit prosecuted by the Federal Trade Commission against Michael and Max. K. Day based on a fraudulent credit card enterprise; and that the equipment was being sold in states that prohibited automated telemarketing.

The "inferential knowledge" pleadings are sufficient to entitle the Trustee to discovery on his claims against Lenders.

Additionally, knowledge is imputed to some Lenders through their agents. "Under Texas law, agency is a legal relationship created by the express or implied agreement between the parties, or by operation of law, under which the agent is authorized to act for and on behalf of the principal, and subject to the principal's control." *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 269 (5th Cir. 1980). A leading authority on agency principals has described a principal-agent relationship as follows:

> There is no particular mode or method which must be adhered to in order to create or establish agency. Regardless of the terms used by the parties, or by what name the transaction is designated, if the facts fairly disclose that one party is acting for or representing another, by the latter's authority the agency exists . . . The relation of principal and agent may be created by manifestations of assent of the respective parties in any way.

WILLISTON ON CONTRACTS, § 35:1 (4th ed. 1999) (citing RESTATEMENT (SECOND) OF AGENCY § 15 (2nd ed. 1958)). Knowledge that an agent acquires within the scope of the principal-agent relationship is imputed to the principal. *La Sara Gravin Co. v. First Nat. Bank of Mercedes*, 673 S.W.2d 558, 563 (Tex. 1984).

The complaint alleges that many Lenders used Today's Destiny representatives to obtain execution of the financing agreements. Lenders paid Today's Destiny a commission for executing the financing agreements. Lenders allowed Today's Destiny to portray Lenders as Today's Destiny's financing unit. The complaint also alleges that many Lenders had "Master Agreements" with Today's Destiny. The Trustee contends that the Master Agreements may contain language that formally describes the principal-agent relationship. By giving Today's Destiny's representatives the leasing documents and entrusting them to execute the documents, the representatives allegedly (and quite conceivably) became agents of Lenders.

The complaint alleges that agents had actual knowledge of the fraudulent scheme. According to the declaration of a former Today's Destiny employee, Eric Fleenor, Jared Day and Mr. Fleenor were responsible for installing the equipment and getting the contracts and financing agreements signed. Jared Day, as an Insider, obviously had knowledge of Today's Destiny's allegedly fraudulent actions. Mr. Fleenor, as an installer and important member of Today's Destiny, also had knowledge of Today's Destiny's conduct. Mr. Fleenor's statement describes how he pressured Customers to sign documents and referred the less compliant Customers to Max Day who would goad Customers "into signing the documents by threatening to charge the customers for the installer's plane tickets, equipment and other items."

The Court finds that the complaint adequately pleads knowledge of the fraudulent scheme through the pled facts suggesting that the Lenders had direct knowledge of the scheme, and the

pled facts suggesting that Today's Destiny representations acted as Lenders' agents.  Though the complaint is not as detailed as Defendants would like, Rule 9(b) allows plaintiffs to aver states of mind generally. FED. R. CIV. P. 9(B) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Lenders contend that the complaint is deficient largely because it does not distinguish between Lenders.  Lenders contend that the complaint should specifically describe which allegations apply to which Lender.  The Court reads the Trustee's complaint as asserting the same allegations against all Lenders: that the Lenders provided financing for the sales and had knowledge of the fraud when they did so.  The Trustee does not need to reassert the same common facts with respect to each Lender.

However, the complaint also suggests that not all Lenders interacted with Today's Destiny and Customers in the same manner.  Most of the differences do not relate to facts required to establish essential elements of the Trustee's claims.  The complaint alleges that some, but not all, Lenders paid incentives to Today's Destiny or its agents to obtain financing agreements.  The payment of an incentive is not a necessary element to any of the Trustee's claims.  The complaint alleges that the financing documents given to Today's Destiny or its agents varied in form and name.  For example, Bankers Health Care Group contends that Customers executed promissory notes rather than "leases" with Customers.  However, all were financing documents that accomplished the same purpose.  Whether one Lender characterized their documents as "leases" rather than promissory notes will not affect the resolution of any of the Trustee's claims.

The complaint alleges some, but not all Lenders, used agents of Today's Destiny to execute the financing documents.  Specifically, the complaint states that "[i]n other instances,

Today's Destiny simply referred its Customers to various Lenders, with whom the Customers dealt directly."  Although not all allegations apply to all Lenders (for example, the "agency" allegations do not apply to all Lenders), the "inferential knowledge" allegations pled in paragraph 74 of the complaint do apply to all Lenders.  The Lenders allege that the complaint fails because the allegations regarding agency and other specific building blocks in the Trustee's theory are not identified on a lender-by-lender basis.  If the "inferential knowledge" allegations were insufficient, the Lenders would be correct.  However, because the Court has found that the "inferential knowledge" allegations are sufficient against all Lenders, the balance of the allegations are merely additional factual allegations that are included as building blocks in the complaint, superfluous to the evaluation of the satisfaction of Rules 8, 9 and 12.

Lenders cite cases holding that a plaintiff cannot "lump" all defendants together for a fraud claim. *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004); *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 216 (5th Cir. 1996); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998); *Mills v. PolarMolecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).  The cited cases are inapplicable to this case.  The cases considered claims of fraud against multiple defendants, rather than aiding and abetting a fraudulent scheme, and the cases turned on the fact that the pleading did not link *any* defendants to the alleged fraud or did not plead *any* material representations. *Id.*

As discussed above, the Trustee has alleged that the Lenders aided and abetted the fraudulent scheme by financing the equipment purchases with knowledge of the fraud.  This is not a situation where one defendant aided and abetted by providing money, another abided and abetted by planning the scheme, another aided and abetted by making a false statement, and yet another aided and abetted by forging a signature.  Plaintiffs need not detail each individual's

aiding and abetting conduct when the plaintiff is alleging that *all* individuals aided and abetted in the same manner.[6]

### b. Contribution Claims

The Trustee seeks contribution from Lenders to the extent that Lenders were joint tortfeasors with Today's Destiny and Insiders.  The Trustee's contribution claim against Lenders is based on the aiding and abetting claim.  Because the contribution claim is derivative of the aiding and abetting claim and the Court has found that the Trustee has adequately pled the aiding and abetting claim, the Court also finds that the Trustee has adequately pled the contribution claim.

Lenders contend that the Trustee cannot assert a contribution claim against any individual Lender based on harms caused by other Lenders.  Lenders contend that the Trustee's contribution claims against Lenders should be limited to their proportionate responsibility for proofs of claim filed by Customers with whom Lenders contracted and should not include claims filed by Customers with whom other Lenders contracted.

The Court disagrees.  The extent of any Lenders' liability for contribution will depend on facts not yet in the record. It is possible that the facts will demonstrate that one Lender's activities allowed a broader array of wrongful activities by Today's Destiny. At this stage in the litigation, the Court's role is limited to evaluating the allegations raised in the pleadings.  The Trustee has adequately pled a contribution claim against Lenders.  The extent of the claim will be determined at trial.[7]

---

[6] The Complaint also asserts a fraud claim against Sterling based on alleged misrepresentations made by a Sterling representative to Customers.  Pursuant to the Court's July 6, 2007 Memorandum Opinion, this fraud claim is owned by Intervenors, not the Trustee.  The Trustee lacks standing to assert the claim.  The Court dismisses the claim.

[7] Lenders also allege that the Contribution claim must be dismissed based on the assumption that Today's Destiny's bankruptcy estate is insolvent and therefore will never be able to make the payment required to trigger a contribution right.  The Court resolved similar arguments in the Court's April 11 Opinion.  The Court rejects any Rule 12(b)(6)

### v. Summary

Evidence regarding Lenders' knowledge and Insiders' participation in the alleged fraud is uniquely within their hands.  Discovery has yet to commence.  The Court has no reason to believe that discovery will not reveal relevant facts.

 "It is a principal of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery.  Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put the defendants on notice as to the nature of the claim." *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1974). The Trustee has pled his claims with sufficient specificity to provide Defendants with notice of the claims they must defend.

The Court makes no findings as to the merits of the Trustee's allegations.  Discovery has yet to commence and the Court has seen no evidence.  However, with respect to Rule 9(b) requests for dismissal, the Court only considers whether the pled facts tell a story with detail sufficient to afford defendants adequate notice of the charges they must defend.  They do.

### Rule 8

Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Insiders allege that the Trustee failed to comply with Rule 8(a)(2) by attaching documents and statements from over 300 Customers.  Insiders allege the over 3,000 pages of exhibits is hardly a short and plain statement and precludes Insiders from complying with Rule 8(b)'s requirements for defensive pleadings.

The Trustee asserted his claims consistent with Rule 8(a).  The Customer statements and documents are attachments, not claims.  Insiders need only respond to the Trustee's complaint.

---

arguments with respect to the contribution claim for the reasons set forth in the Court's April 11 Opinion.

Insiders do not need to respond to allegations made in the attachments to the extent they are not made in the complaint.  The Court denies Insiders' Rule 8 argument.

### Rule 12(e)

Lenders seek a more definite statement of the aiding and abetting allegations under Rule 12(e) as an alternative to a dismissal under Rule 9(b).  Rule 12(e) allows courts to order an amended pleading with a more definite statement of the allegations when the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e).  Because of Rule 8's liberal pleading rules, Rule 12(e) motions are disfavored. *PNC Bank v. Smuck*, 2009 WL 481261 *1 (Feb. 20, 2009) (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959)).  Rule 12(e) motions cannot be used as a substitute for discovery. *Id*. (citing *Mitchell*, 269 F.2d at 132). "Rule 12(e) is ordinarily restricted to situations where a pleading suffers from 'unintelligibility rather than want of detail.'" *Id*. (citing 2A MOORE'S FED. PRAC. ¶ 12.81[1], at 2389 (2d ed. 1985)). To the extent that the Court denies relief under Rule 9(b), the Court denies relief under Rules 8 and 12.

Lenders complain that the complaint improperly groups all Lenders together despite statements in the pleading suggesting that some, but not all Lenders carried out the alleged acts. Lenders contend that the Trustee should provide a more definite statement specifying the specific conduct of each Lender.

Lenders do not (and could not) assert that Trustee's complaint is unintelligible.  The complaint sets forth plain and understandable allegations supporting the Trustee's claims. Rather, Lenders contend that the Trustee should further specify facts that Lenders already know: Lenders' interactions with Today's Destiny.  The complaint alleges that Lenders aided and abetted a fraudulent scheme by financing purchases of fraudulent equipment.  The complaint

alleges that Lenders knew about the fraudulent scheme and supports the allegations with specific facts.   Not all facts may apply to all Lenders.   However, given Rule 8's liberal pleading requirements and that knowledge can be averred generally under Rule 9(b), the Court finds that the Trustee's complaint gives Lenders adequate notice of what claims they must defend.[8]

Insiders also seek a more definite statement that would describe the date, time, specific acts, and damages with respect to each Customer.   Insiders allege that these facts may be important for statute of limitation defenses.   The Court agrees that the timing issue may be important.   However, requiring the Trustee to identify specific facts with respect to each of the over 900 Customers would be inconsistent with Rule 8.   Defendants may assert any applicable statute of limitations defense without the detailed claim-by-claim analysis that they request.

### Rule 12(f)

"A motion to strike under Rule 12(f) serves to eliminate redundant, immaterial, impertinent, or scandalous matter in pleadings." *Puckett v. U.S.*, 82 F. Supp. 2d 660, 662 (S.D. Tex. 1998).

Defendants object to statements within the Trustee's complaint regarding the following: the Day's prior business activities that led to an injunction obtained by the Federal Trade commission; the different business entities Defendants used to sell the autodialing equipment; lawsuits against Lenders for predatory lending; and allegedly inflammatory and prejudicial phrases used to describe Defendants' conduct.

---

[8] Lenders also argue that the Complaint should be dismissed because it does not specify any fraudulent statement or conduct by Lenders.  This argument is without merit.  The Trustee does not assert a fraud claim against Lenders. The Trustee is seeking damages for aiding and abetting breaches of fiduciary duties.  When the breach of fiduciary duty claim is based on fraudulent conduct, the claim requires a showing of fraud, but only with respect to the party that was aided and abetted.  The Trustee simply does not contend that Lenders committed fraud. Nor must the Trustee make such allegations to sustain an aiding and abetting claim.

The Court denies Defendants' motions to strike. Statements regarding the Day's prior activities may be relevant to establishing Lenders' knowledge of the fraudulent scheme. The Trustee asserts knowledge of the Federal Trade Commission suit as a basis for Lenders' knowledge of Today's Destiny's allegedly fraudulent scheme. Statements regarding the different business entities is relevant for demonstrating how the fraud occurred. Statements regarding the Lenders' involvement in similar lawsuits is relevant for explaining how Lenders aided and abetted the alleged fraud. The phraseology used to describe Defendants' alleged conduct is not prejudicial or inflammatory. The Trustee has filed a complaint based on an allegation of fraud. The Trustee is allowed to describe the conduct as fraudulent when his claim is for fraud.

### Newly Asserted Claims

The Trustee asserts conspiracy and indemnity claims against Lenders for the first time in the Third Amended Complaint.

#### i. Conspiracy

"'The essential elements [of civil conspiracy] are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.'" *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). "[M]erely proving a joint 'intent to engage in the conduct that resulted in the injury' is not sufficient to establish the cause of action for civil conspiracy." *Id.* (quoting *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995)). "Instead, 'civil conspiracy requires specific intent' to agree 'to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Id.* (quoting *Triplex Communications, Inc.*, 900 S.W.2d at 719). "Civil conspiracy is a separate cause of action [from aiding and abetting] that requires, *inter alia*,

an underlying tort and a 'meeting of the minds among the conspirator[s] on the object or course of action to be taken." *Floyd v. Hefner*, 556 F.Supp.2d 617, 659–60 (S.D. Tex. 2008) (quoting *Days Inn Worldwide, Inc. v. Sonia Investments*, 2006 WL 3103912 at *19 n. 20 (N.D. Tex. Nov. 2, 2006)). "By contrast, a cause of action under *Cox* and *Kinzbach* [for aiding and abetting] require only the knowing participation of a party in a breach of a fiduciary duty and does not require a conspiratorial agreement." *Id*.

Pursuant to the Court's July 6, 2007, and April 11, 2008 Opinions, the Court dismissed the Trustee's conspiracy claim with respect to Lenders.  The Court previously determined that any claim for conspiracy to breach fiduciary duties is owned by Intervenors.  To the extent that the complaint alleges that Lenders conspired to aid and abet breaches of fiduciary duty, the Court dismisses the claim.  The complaint asserts no allegations that the Lenders in any fashion associated with each other in a conspiratorial scheme.  To the extent the complaint alleges that Lenders individually conspired with Today's Destiny to breach fiduciary duties, the Trustee makes no allegations with respect to the required "meeting of the minds."  Though there are allegations that Lenders had *knowledge* of the fraudulent scheme, there are no allegations that Lenders had the required specific intent to carry out the fraudulent scheme.

Generally, Courts should freely grant parties leave to amend a complaint that is deficient in its pleading. FED. R. CIV. P. 15(a)(2). However, the Supreme Court has held that affording additional opportunities to amend is not always appropriate.  Before allowing amendment, the Court must consider five factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the

amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L. Ed. 2d 222 (1962); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003).

The Trustee has failed to cure deficiencies by prior amendments and further delay would cause undue prejudice to all parties. The Court has already authorized three amended complaints. The adversary has been pending for over two years. The Trustee has had an adequate opportunity to comply with the pleading requirements of the Federal Rules of Civil and Bankruptcy Procedure and this adversary proceeding has already been substantially delayed.

### a. Conspiracy Claims against Insiders

The Trustee also asserts claims for general conspiracy and conspiracy to denude against Insiders. The Court's April 11 Memorandum Opinion dismissed the general conspiracy claim.[9] The Court finds that the Trustee has adequately pled the conspiracy to denude claim . The complaint describes in detail a fraudulent scheme orchestrated by Today's Destiny's Insiders. The complaint describes numerous overt acts and the damages caused. The complaint asserts that Insiders had the required "meeting of the minds." The allegations that the Insiders are a small group of related individuals who independently controlled Today's Destiny gives rise to an inference of a "meeting of the minds."

Accordingly, the Court dismisses the Trustee's conspiracy claims against Lenders and general conspiracy claim against Insiders, but does not dismiss the conspiracy to denude claim.

---

[9] Insiders' argument that the Trustee's breach of fiduciary duty claim and punitive damages for that claim were also dismissed by the April 11 Opinion is without merit. The April 11 Opinion dismissed only the breach of fiduciary duty claims based on harms to creditors, but the claim based on harm to the estate. Nothing in the April 11 Opinion precludes the Trustee from seeking punitive damages for the breach of fiduciary claim owned by the Trustee rather than Intervenors.

### ii. Indemnity

The Trustee alleges that, on information and belief, Lenders have oral or written indemnity agreements with Today's Destiny.  Plaintiffs can assert claims, including fraud claims, on information and belief when the facts relating to the claim are "peculiarly within the perpetrator's knowledge." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citing *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).  The Trustee describes "Master Agreements" between Lenders and Today's Destiny that set-forth the parties' relationship.  However, because discovery has not commenced, the Trustee provides no details with respect to the indemnity agreements.  Given the fact that knowledge of the agreements is peculiarly within Defendants' knowledge, the lack of discovery, and the relatively simple nature of a contractual indemnity claim, the Court finds that the Trustee's complaint is consistent with Rule 8 and 12's requirements.[10]

The Trustee also asserts a common law indemnity claim. "The only remaining vestiges of common law indemnity involve purely vicarious liability or the innocent product retailer situation." *Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc.*, 751 S.W.2d 179 (Tex. 1988) (citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 819–20 (Tex. 1984). Neither situation applies to this case.  The Court dismisses the Trustee's common law indemnity claims.

### Settling Defendants

Any Lender that qualifies as a "settling defendant" as defined in the Court's April 11 Memorandum Opinion cannot be liable for the Trustee's aiding and abetting claim.  An entity

---

[10] Some Lenders contend that the Court must dismiss the indemnity claim to the extent that it seeks indemnity from a Lender for harms caused by other Lenders.  The Trustee has alleged indemnity to the extent allowed by Defendants' agreements.  The Trustee's allegation is sufficient to survive a motion to dismiss.  The Trustee does not seek indemnity not authorized by any agreements.  Whether the Trustee seeks indemnity not authorized by any agreements is a factual question not ripe for consideration.

qualifies as a "settling defendant" only if they have compromised all potential claims the aggrieved party has against the settling defendant. TEX. CIV. PRAC. & REM. CODE § 33.11(5). However, "settling defendants" who have settled with Customers but not with the Trustee may still have liability to Today's Destiny under indemnity agreements. Accordingly, the Court dismisses any aiding and abetting and contribution claims against "settling defendants" but does not dismiss "settling defendants" outright because of potential liability under alleged indemnity agreements.

### Other Matters

### i. Discovery Rule and Rule of Adverse Domination

The Trustee pled the discovery rule and the rule of adverse domination. Both doctrines toll statutes of limitation. "The discovery rule exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim." *Wagner & Bohm, Ltd. v. Horwood*, 58 S.W. 3d 732, 734 (Tex. 2001). The adverse domination rule generally tolls the statute of limitations for a corporation's claims against board members where the board was dominated by members who were not disinterested. *F.D.I.C. v. Dawson*, 4 F.3d 1303, 1309–10 (5th Cir. 1993).

Defendants contend that the Trustee has insufficiently pled the discovery rule and adverse domination. The Court rejects Defendants' contention. Neither doctrine is a cause of action. Moreover, the applicability of either doctrine and any affirmative defense based on a statute of limitations revolves around factual issues rather than legal issues. Accordingly, the applicability of the discovery rule and the adverse domination doctrine is more appropriately resolved through summary judgment motions, after both parties have had the opportunity to undertake discovery.

### ii. Forum Selection Clauses

Some Lenders allege that the Trustee's complaint must be dismissed based on forum selection clauses within Lenders' contracts with Customers. The Court considered and rejected these arguments in the April 11 Memorandum Opinion. Lenders should refer to pages 35–36 of the Memorandum Opinion.

### iii. June 28, 2006 Order

Insiders also allege that the complaint should be dismissed for failing to comply with a prior Court order requiring the Trustee to amend his complaint. Insiders previously urged this same argument. The Court resolved this argument in its May 12, 2008 Order Denying Defendants' Motion to Amend Order (docket #462). Subsequent to the June 28 Order, the Trustee has amended his complaint consistent with the Court's orders.

### Conclusion

For the reasons set forth above, the Court denies Defendants' motions in part. The Court dismisses the following claims made by the Trustee:

- ▪ conspiracy claims against Lenders.

- ▪ general conspiracy claims against Insiders.

- ▪ aiding and abetting and contribution claims against "settling defendants".

- ▪ fraud claims against Sterling National Bank.

- ▪ common law indemnity claims against Lenders.

All other motions to dismiss the Trustee's complaint are denied. A separate order will be issued.

SIGNED **May 1, 2009.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE