

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**ENTERED**
**05/01/2009**

| | | |
|---|---|---|
| IN RE: | § | |
| TODAY'S DESTINY, INC. | § | CASE NO: 05-90080 |
| Debtor(s) | § | |
| | § | CHAPTER  7 |
| | § | |
| JOSEPH M. HILL | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3285 |
| | § | |
| MICHAEL DAY, *et al* | § | |
| Defendant(s) | § | |

<u>**MEMORANDUM OPINION ON MOTIONS**
**TO DISMISS INTERVENORS' COMPLAINT**</u>

**Factual Background**

On October 13, 2005, Today's Destiny, Inc. ("Debtor") filed a chapter 7 bankruptcy

petition.  Debtor was in the business of selling "predictive dialing equipment" to dentists and

chiropractors ("Customers").  Predictive dialing equipment is designed to increase the efficiency

of telemarketers by connecting marketing agents only to "live" persons rather than unanswered

phones, voice mail, or answering machines.   Various financial institutions ("Lenders")[1]

financed the equipment sales and leases by entering into agreements with Customers.

Customers filed over 300 proofs of claim for damages arising from the sales and leases.

Customers largely contend that Debtor sold them worthless equipment at prices of $18,000.00-

80,000.00.  As of October 29, 2008, Customers' proofs of claim totaled over $20,000,000.00.

---

[1] The term "Lenders" refers to financial institutions, other lenders, and leasing companies, as used in the Court's
July 6, 2007 Memorandum Opinion on Motions to Intervene and Order.

**Procedural Background**

On March 21, 2006, the chapter 7 Trustee filed an adversary proceeding against Debtor's principals ("Insiders")[2] and Lenders.  The Trustee contends that Debtor and Lenders defrauded Customers through the fraudulent sale and leasing of the predictive dialing equipment.  Debtor's principals and Lenders deny the allegations.

During February through April of 2007, Insiders and Lenders ("Defendants") filed Motions to Dismiss, Motions for More Definite Statement, and Motions to Abstain with respect to the Trustee's complaint.  The majority of Defendants' motions have been resolved by separate Memorandum Opinions on July 6, 2007, and April 11, 2008.

The July 6 Opinion determined whether certain Customers seeking to intervene in this adversary ("Intervenors") could intervene under the Federal Rules of Bankruptcy Procedure, which claims asserted by the Trustee were owned by the estate, and which claims were owned by putative Intervenors. *In re Today's Destiny, Inc.*, 2007 WL 2028111 (Bankr. S.D. Tex. July 6, 2007). The Court found that Intervenors' claims shared a sufficient commonality with the Trustee's claims and therefore authorized intervention under Rule 7024. *Id.* The Court's Opinion also included a chart categorizing which claims were owned by the Today's Destiny's estate and which were owned by Intervenors. *Id.*

The April 11, 2008, Opinion resolved issues regarding *in pari delicto*, contribution under the Texas Civil Practice and Remedies Code, and abstention. *In re Today's Destiny, Inc.*, 388 B.R. 737 (Bankr. S.D. Tex. 2008). An essential holding of the April 11 Opinion was that the Trustee's contribution claim could only be sustained if Today's Destiny's liability could become

---

[2] The "Insiders" include: Michael Day, president, chief executive officer and chairman of the board; Max K. Day, senior vice president and chief operating officer; Max O. Day, vice president; Chaz Robertson, vice president of sales; Joshua Smith, vice president of operations; Jared Day, the "closer" in sales and; Terry Vanderpool, General Counsel.  On July 12, 2007, a default judgment was entered against Chaz Robertson and Joshua Smith.

fixed.  Accordingly, the Court issued deadlines for filing objections to Customers' proofs of claim.  Lenders objected to nearly all of the more than 300 proofs of claim.

On November 26, 2008, the Court issued a Memorandum Opinion resolving most of the claim objections.  Subsequently, the parties filed a joint motion to extend pending deadlines to afford the parties the opportunity to mediate.  On December 11, 2008, the Court issued an Order that abated the bankruptcy case and the adversary proceeding until the conclusion of the parties' mediation.  On March 9, 2009, the parties informed the Court that approximately half of the Lenders settled with the Trustee and Intervenors.[3]  On April 27, 2009, the Court issued an order approving the settlements.

### Scope of this Memorandum Opinion

Pursuant to the April 11 Opinion, the Court issued an Order authorizing Intervenors to file a complaint.  Intervenors filed a Consolidated First Amended Complaint on May 12, 2008 (docket # 461).  The April 11 Opinion gave Defendants the opportunity to re-urge their Rule 8, 9, and 12 arguments, and to re-urge abstention arguments that were not considered in the April 11 Opinion.[4]  Defendants filed over 20 motions to dismiss or for a more definite statement.  This Memorandum Opinion resolves Defendants' motions.  The Court will consider Lenders' and Insiders' motions separately below.

---

[3] The Court does not consider motions to dismiss filed by Lenders who are parties to the settlement approved on April 27, 2009.  They are no longer parties to this adversary and lack standing.

[4] A prior scheduling order had bifurcated consideration of the Rule 8, 9, and 12(e) issues from the issues addressed in the April 11 Opinion.  The April 11 Opinion also did not consider abstention arguments with respect to Intervenors because the arguments were not yet ripe for consideration.

**Jurisdiction**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334.  The Intervenors'

complaint is a related, rather than a core, proceeding under 28 U.S.C. § 157(b).  Venue is proper

in this District pursuant to 28 U.S.C. § 1409.

**Lenders' Motions to Dismiss**

**i. Forum Selection Clauses**

Lenders' financing agreements with Customers contained forum selection clauses

providing that any disputes would be resolved in a non-Texas forum.  The Court's April 11

Memorandum Opinion considered the effect of the forum selection clauses on the Trustee's

complaint.  Because the Trustee's complaint did not assert any claims owned by Customers, the

April 11 Opinion held that the forum selection clauses did not preclude the Trustee from

asserting claims in this Court.  Intervenors, however, are asserting claims against Lenders arising

out of their financing agreements with Lenders.  Intervenors have not filed any responsive

pleadings contesting the existence or enforceability of forum selection clauses or the effect of the

clauses on this Court's jurisdiction.

Accordingly, the Court grants Lenders' motions to dismiss based on the forum selection

clauses.

**ii. Abstention**

The Court additionally notes that dismissal of Lenders is warranted under § 1334(c)(1),

the permissive abstention provision of the United States Code.

**a. Mandatory**

Title 28 U.S.C. § 1334(c)(2) provides for mandatory abstention when:

Upon timely motion of a party in a proceeding based upon a State law claim or State law
cause of action, related to a case under title 11 but not arising under title 11 or arising in a

case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

The Fifth Circuit has interpreted this provision to mandate abstention where:

(1) [t]he claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related or in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court.

*Edge Petroleum Operating Co., Inc. v. GRP Holdings (In re TXNB Internal Case)*, 483 F.3d 292, 300 (5th Cir. 2007) (quoting *Schuster v. Mims (In re Rupp & Bowman)*, 109 F.3d 237, 239 (5th Cir. 1997)).

"The party requesting abstention must prove the existence of each element by a preponderance of the evidence." *In re Lorax Corp.*, 295 B.R. 83, 90 (Bankr. N.D. Tex. 2003) (citing *Brizzolara v. Fisher Pen Co.*, 158 B.R. 761 (Bankr. N.D. Ill. 1993); *York v. Bank of America, N.A. (In re York)*, 291 B.R. 806, 816 (Bankr. E.D. Tenn. 2003); *In re Taylor Agency, Inc.*, 281 B.R. 354 (Bankr. S.D. Ala. 2001); *In re WorldCom Secs. Litg.*, 293 B.R. 308, 331 (S.D. N.Y. 2003)).

Lenders have not met their burden with respect to mandatory abstention. Section 1333 provides for diversity jurisdiction within federal courts where the parties are citizens of different states and the amount in controversy exceeds $75,000.00. Intervenors seek economic and special damages that exceed $75,000.00. Lenders offer no evidence that Intervenors and Lenders lack the required diversity of citizenship.

### b. Permissive Abstention

Title 28 U.S.C. § 1334(c)(1) provides for permissive abstention. Section 1334(c)(1) provides:

> [N]othing in this section prevents a district in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

Bankruptcy courts have wide latitude in determining whether to remand a state law cause of action. The Fifth Circuit has held that under 28 U.S.C. § 1334(c)(1), the court has "broad discretion to abstain from hearing state law claims 'whenever appropriate in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *In re Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996) (quoting 28 U.S.C. § 1334(c)(1)).

In determining whether discretionary abstention or equitable remand is appropriate, courts have developed a list of nonexclusive factors, including:

> (1) the effect or lack thereof on the efficient administration of the estate;
> (2) extent to which state law issues predominate over bankruptcy issues;
> (3) difficult or unsettled nature of applicable law;
> (4) presence of related proceeding commenced in state court or other non-bankruptcy proceeding;
> (5) jurisdictional basis, if any, other than § 1334;
> (6) degree of relatedness or remoteness of proceeding to main bankruptcy case;
> (7) the substance rather than the form of an asserted core proceeding;
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden of the bankruptcy court's docket;
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
> (11) the existence of a right to a jury trial;
> (12) the presence in the proceeding of nondebtor parties;
> (13) comity; and
> (14) the possibility of prejudice to other parties in the action.

*J.T. Thorpe Co. v. Am. Motorists*, No. H-02-4598, 2003 WL 23323005 (S.D. Tex. June 6, 2003) (citing *Beasley v. Pers. Fin. Corp.*, 279 B.R. 523, 533 (S.D. Miss. 2002)). *See also In re Encompass Servs. Corp.*, 337 B.R. 864, 878 (Bankr. S.D. Tex. 2006).   Many permissive abstention factors support abstention in this case.

The complaint asserts only state law claims.   The complaint seeks recovery under the following causes of action against Lenders:

- ▪ fraudulent conveyance

- ▪ rescission of marketing contracts with Today's Destiny's and related entities and financing contracts with Lenders

- ▪ conversion

- ▪ declaratory judgment with respect to the characterization and enforceability of "leases"

- ▪ wrongful acceleration

- ▪ preferential transfer[5]

With the exception of the fraudulent conveyance and preferential transfer claims, all claims are state law contract or tort claims.   Under §§ 544, 547 and 548, only the Trustee can assert fraudulent conveyance and preference actions. *Highland Capital Management LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 589 & n. 9 (5th Cir. 2008).   The Court dismisses the claims under Rule 12(b)(1).

Efficiency concerns are also implicated.   Though Intervenors' claims against Lenders involve the same factual allegations raised in the Trustee's complaint, any efficiencies that may be gained by this Court's familiarity with the Trustee's adversary and the possibility that the

---

[5] The complaint divided the causes of action into separate sections, each section beginning with a heading describing the claim and who the claim is being asserted against.   The headings do not always adequately specify whom the claim is being asserted against.   However, the text following the heading clarifies whom Intervenors assert liability against for each claim.   The Court's categorization of claims is based on a reading of the complaint as a whole, not any individual statement read in isolation.

Trustee's and Intervenors' claims can be jointly tried are outweighed by other considerations. The Trustee's claims have been vigorously contested by dozens of Lenders. The involvement of numerous, well-represented parties has added great expense, complexity, and delay to this adversary. Additionally, the Trustee's complaint has become intertwined with the proof of claim allowance process in Today's Destiny's bankruptcy case. The Trustee's complaint has become two lawsuits: one tried in the adversary proceeding, and a second tried through the proofs of claim allowance process in the bankruptcy case. This adversary has been pending for over three years and required five lengthy memorandum opinions from this Court, yet discovery has yet to commence. The record overwhelmingly suggests that state courts would more efficiently resolve Intevenors' claims.

Retaining Intervenors' claims against Lenders will only lengthen rather than shorten resolution of this adversary. Pleadings demonstrate that many Intervenors are involved in similar litigation in state court. It makes no sense to use this Court's resources and add further complexity to an already complex case by retrying issues pending in state courts. All parties will be prejudiced by the added cost of retrying issues and suffering the delays caused by the greater complexity added to this adversary.

Additionally, the claims involve non-debtor parties only and Lenders are entitled to a jury trial. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989).

For the reasons set forth above, the permissive abstention factors favor abstention under § 1334(c)(1).

**Insiders' Motions to Dismiss**

Insiders primarily argue that Intervenors' complaint is deficient in the following respects: (i) Intervenors and their representatives are not properly identified; (ii) fraud is not pled with the required specificity; (iii) contract-based claims are not sufficiently plead; (iv) certain claims are owned by the Trustee; and (v) the statute of limitations has run on the TDTPA claims. The Court considers Insiders' arguments separately below.

### i. Identification of Intervenors and their Representatives

"A party to a suit may by timely motion dispute the authority of the opposing attorney to act for the party in whose name he is proceeding . . ." *In re Retail Chemists Corp.*, 66 F.2d 605, 608 (2nd Cir. 1933) (citing *Pueblo of Santa Rose v. Fall*, 273 U.S. 315, 319 (1927)). Courts "have undoubted power to require counsel before us to demonstrate their authority." *Donnelly v. Parker*, 486 F.2d 402, 405 n.6 (D.C. Cir. 1973).

Intervenors' complaint was signed by a single attorney, Donald Scott Mackenzie. Intervenors' response to Defendants' motions to dismiss was also signed only by Mr. Mackenzie. The response includes an Exhibit 1 listing the settlement status of various Intervenors. Exhibit 1 also lists the Intervenors' representative. Of the 45 Intervenors listed in Exhibit 1, only 14 Intervenors are listed as represented by Mr. Mackenzie. Four other attorneys are listed as representing other Intervenors.

Despite Exhibit 1's suggestion that only a portion of the Intervenors are represented by Mr. Mackenzie, Mr. Mackenzie purports to act on behalf of all parties authorized by this Court to Intervene. Paragraph 3 of Intervenors' complaint defines Intervenors as parties "who filed motions to intervene on or about December 27th 2006 through January 3rd, 2007." Intervenors filed a response to Defendants' motions to dismiss (docket #570) clarifying that the complaint

9

was brought on behalf of all Intervenors listed in Exhibits A and B of the Court's April 11, 2008 Case Management Order.  Exhibits A and B of the April Order include all parties the Court authorized to intervene in the July 6, 2007 Opinion.  The Court's July 6, 2007 Opinion included an attachment (Exhibit C) that listed all parties that the Court authorized to intervene.  Exhibit C listed over 100 individuals and entities.

Based on the discrepancy between the statement that all parties listed in Exhibits A and B of the April 2008 Case Management Order are Plaintiffs and Exhibit 1's indication that not all parties are represented by Mr. Mackenzie, Intervenors' complaint does not adequately identify the parties to the complaint.  To the extent that Intervenors' complaint is brought on behalf of all parties the Court authorized to intervene, the Court questions Mr. Mackenzie's authority.

The Court orders Mr. Mackenzie to file an affidavit and documentation evidencing the Intervenors he is representing within this adversary proceeding by May 15, 2009.  Any claims by parties authorized to intervene by the Court's prior orders but who are not represented by Mr. Mackenzie will be dismissed for want of prosecution.  The Court's April 11, 2008 Case Management Order required any party authorized to intervene to file a complaint by May 12, 2008 if they wished to assert claims in this adversary proceeding.

Insiders also correctly note that Intervenors' complaint does not comply with Rule 10(a).  Rule 10(a) requires the title of a complaint to name all parties. FED. R. CIV. P. 10(a). Intevenors' complaint lists only Joseph M. Hill, the chapter 7 Trustee, as a plaintiff.  Mr. Mackenzie shall file an amended complaint by May 15, 2009 that complies with Rule 10(a).

### ii. Fraud Claims

#### a. Rule 9(b)

Rule 9(b) requires the circumstances constituting fraud to be pled with "particularity." FED. R. CIV. PROC. 9(B); FED. R. BANKR. PROC. 7009.[6] Under Rule 9's particularity requirement, the party asserting the fraud claim must allege "the existence of acts and circumstances sufficient to warrant the pleaded conclusion that fraud ha[s] occurred." *In re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994) (citing *Askanase v. Fatjo*, 148 F.R.D. 570, 574 (S.D. Tex. 1993); *see also Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 ("the Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent"). "At a minimum, [Rule 9] requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). The defendant's state of mind, however, may be generally averred. *See e.g. Collmer v. U.S. Liquids, Inc.*, 268 F. Supp. 2d 718, 723 (S.D. Tex. 2003).

Rule 9(b)'s application is not limited to pure fraud claims. Rather, Rule 9(b) applies to any averment of fraud within a claim that has a fraud-based element. *Lone Star Ladies Inc. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368–69 (5th Cir. 2001); *In re Am. Intern Refinery* --- B.R. ---, 2008 WL 2116411 *5 (Bankr. W.D. La. May 19, 2008); *In re Sharp Intern Corp.*, 302 B.R. 760, 770 (E.D. N.Y. 2003) ("Furthermore, to the extent the underlying breaches of fiduciary duty are based on fraudulent conduct, the complaint must meet the heightened pleading requirements of Rule 9(b) . . .").

---

[6] Federal Rule of Bankruptcy Procedure 7008, 7009, and 7012 incorporates Rules 8, 9, and 12 of the Federal Rules of Civil Procedure within adversary proceedings filed in bankruptcy courts. Accordingly, the Court refers to Federal Bankruptcy Rules and Rules of the Federal Rules of Civil Procedure interchangeably.

Rule 9(b)'s application is flexible and influenced by the circumstances of the case. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). Pursuant to Rule 8(e), the Court must construe the pleadings "to do justice." *Williams*, 112 F.3d at 178. Though Rule 9(b) requires parties asserting fraud claims to provide more specific allegations then that required of other claims, the Rule does not require plaintiffs to assert every fact they will attempt to prove at trial. Rule 9(b) must be "read in connection with F. R. CIV. P. 8 which requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 430 (5th Cir. 1990) (citing *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 n. 20 (2d Cir. 1979)); *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

### b. Intervenors' Fraud Pleadings

Intervenors assert fraud claims against Today's Destiny, related entities, and Insiders. Insiders Michael Day, Max K. Day, Max O. Day, Jared Day, and Terry Vanderpool contend that Intervenors have not pled fraud with sufficient particularity for each individual Insider. Rather, Insiders contend that the complaint describes a general fraudulent scheme without ascribing any particular fraudulent conduct to any particular defendant.

The Court finds that the Intervenors' complaint adequately asserts the who, when, where, and how of the alleged fraudulent scheme with respect to Today's Destiny and related entities. The Intereevenors' complaint spends over 20 pages detailing the scheme and largely repeats allegations raised in the Trustee's Third Amended Complaint. In a separate Memorandum Opinion, the Court found that the Trustee's Third Amended Complaint adequately plead fraud against Insiders. For the sake of completeness, the Court summarizes the allegations made in both the Trustee's amended complaint and Intervenors' complaint:

Max K. Day and his brother Michael Day formed Today's Destiny in 1997 and continued its operations into 2005.  They brought on defendants Max O. Day, Chaz Robertson, Joshua Smith, and Terry Vanderpool to serve in high-level positions (the "Insiders").  Today's Destiny also operated under the names The Next Generation Inc., The Next Generation Systems, Interactive Business Development, Inc., Interactive Business Development Marketing, Inc., and Medicus Marketing.  Today's Destiny marketed "predictive dialing equipment" to medical professionals, namely chiropractors and dentists.  The equipment was essentially an automated telemarketing system designed to call potential customers and play a recorded message.  The equipment included basic computer and software components.  Though located in Houston, Today's Destiny solicited Customers nationwide through journal and magazine advertising and cold calls.  The equipment was sold to over 900 Customers.

Today's Destiny and Insiders made numerous misrepresentations regarding the value and nature of the equipment and services when soliciting sales.  Today's Destiny and Insiders made guarantees, including a guarantee of $60,000.00 of revenue in the first two weeks of use.  Today's Destiny and Insiders promised marketing services with the equipment.  Advertisements included testimonials purporting to be from doctors who had used the equipment.  The picture accompanying some testimonials was a picture of Max K. Day.  Other persons giving positive references were paid a monthly fee to make favorable statements.

Today's Destiny's agents used various delay tactics and false representations to rush Customers into signing agreements without examining the documents.  Defendants sold the units for $18,000.00 to $80,000.00.  Today's Destiny's cost for the equipment was less than $2,000.00 per unit.  The promises and guarantees were illusory. The equipment did not work as advertised if it worked at all.  The promised marketing services were not provided. The sales contracts

contained impossible "minimum operating requirements" that Customers had to meet before the guarantee would be honored. If the allegations are proven to be true, Plaintiffs were sold shoddy equipment for vastly inflated amounts.

Non-Lender Defendants negotiated agreements with Lenders to provide financing for the equipment purchases. Though some Lenders dealt with Intervenors directly after being referred by Today's Destiny representatives, most Intervenors provided the financing documents to Today's Destiny whose agents then provided them to Intervenors. Non-settling Intervenors remain obligated to make payments pursuant to their financing agreements.

The Intervenors' complaint adequately pleads an underlying scheme orchestrated to defraud customers by Today's Destiny and related entities. The complaint also adequately pleads fraud with respect to Michael and Max K. Day. The complaint attributes numerous misrepresentations made by them and describes their role in Today's Destiny and related entities.

The complaint does not adequately plead fraud with respect to Terry Vanderpool, Jared Day, or Max O. Day. Terry Vanderpool is never mentioned in the complaint. No discrete acts are attributed to him. Max O. Day and Jared Day are mentioned only as officers of Today's Destiny or related entities. No discrete acts are attributed to them.

Generally, Courts should freely grant parties leave to amend a complaint that is deficient in its pleading. FED. R. CIV. P. 15(a)(2). However, "Rule 15(a) applies where plaintiffs 'expressly requested' to amend." *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Intervenors' sole response to dozens of lengthy motions filed by Lenders and Insiders was a two-page response to Lenders' motions only, stating that they would be willing to file a second amended complaint that clarified that individual Intervenors are only

seeking relief against the Lender with whom they contracted.  Intervenors have not requested leave to amend their complaint in response to Insiders' motions to dismiss.

Additionally, courts must consider five factors when considering whether leave is appropriate: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L. Ed. 2d 222 (1962); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003).

Concerns raised in Insiders' motions to dismiss should not have surprised Intervenors. This adversary has been pending for over three years.  The Trustee has filed four lengthy complaints and Defendants have filed over 100 lengthy motions.  Intervenors failed to respond to Insiders' motions at all and filed only a cursory response to Lenders' motions.  Intervenors' inability to adequately plead claims against Max O. Day, Jared Day, and Terry Vanderpool after three years of litigation and dozens of motions, combined with their failure to respond to Insiders' most recent motion, demonstrates that granting leave to amend would be futile and only cause more prejudicial delay.

### iii. Contract Based Claims

Intervenors assert breach of warranty and illegality of the underlying contract claims based on the same fraud allegations.  The Court reads the complaint as asserting these claims only against Today's Destiny and related entities.  Intervenors have adequately pled a fraudulent scheme orchestrated by Today's Destiny and related entities that, if proven, would sustain Intervenors' breach of warranty and illegality of the underlying contract claims.  The Court denies Insiders' motions to dismiss these claims.

### iv. Claims Owned by the Trustee

Intervenors' alter ego, sham to perpetrate a fraud, and single business enterprise claims belong to Today's Destiny's bankruptcy estate and consequently can only be asserted by the Trustee. The Court's July 6, 2007 Memorandum Opinion previously held that, under the Fifth Circuit's *In re Schimmelpenninck* Opinion, the Trustee owned the alter ego and sham to perpetrate a fraud claims. Though the July 6 Opinion did not address a single business enterprise claim, *Schimmelpenninck* directly held that single business enterprise claims belong to the estate. *Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347 (5th Cir. 1999).

Fraudulent conveyance claims also can only be asserted by the Trustee. *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 589 & n.9 (5th Cir. 2008) ("It is normally the debtor's creditors, and not the debtor itself, that have the right to assert a fraudulent transfer claim outside of bankruptcy, but in bankruptcy such a claim is usually brought by the trustee, for the benefit of all creditors . . . because the claim is really seeking to recover property of the estate.") (citing *Am. Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica)*, 714 F.2d 1266, 1272 (5th Cir. 1983)).[7]

Accordingly, the Court dismisses Intervenors' alter ego, sham to perpetrate a fraud, single business enterprise, and fraudulent conveyance claims.

### v. TDTPA Claim

Intervenors assert claims under the Texas Deceptive Trade Practices Act ("TDTPA") based on the alleged fraudulent scheme detailed above. The fraudulent scheme is sufficiently pled to support the TDTPA claims. Insiders also contend that the statute of limitations has run

---

[7] Under the "Prayer" section of Intervenors' complaint, Intervenors also assert preference claims against Today's Destiny. Though *Seven Seas* did not directly address preference claims, the same logic applied to fraudulent transfer claims applies to preference. Moreover, the body of the complaint asserts no allegations supporting a preference claim. Accordingly, the Court dismisses any asserted preference claims.

on the TDTPA claims.  Based on the pleadings, the Court cannot discern whether a statute of limitations has run on Interevenors' claim.  The statute of limitations defense will depend on facts not yet in the record.  The statute of limitations argument is more appropriately addressed after discovery has commenced and through summary judgment motions.

### Conclusion

For the reasons set forth above, the Court dismisses the following:

▪ all claims asserted against Lenders, which claims are dismissed without prejudice in favor of a non-bankruptcy forum.

▪ fraud and fraudulent inducement claims against Terry Vanderpool, Jared Day, and Max O. Day, which claims are dismissed with prejudice against the Intervenors based on their inability to articulate claims.

▪ alter ego, sham to perpetrate a fraud, single business enterprise, fraudulent conveyance, and preference claims against Insiders, which claims are dismissed with prejudice against the Intervenors solely on the basis that the only party who may assert such claims is the Trustee.

All other motions to dismiss the Intervenors' complaint are denied.

The Court also orders the following:

▪ By May 15, 2009, Mr. Mackenzie shall file an affidavit or other verified statement in which he identifies which of the Intervenors in adversary 06-03285 were represented by him as of (i) May 8, 2008; and (ii) the date of the mediation.

▪ By May 21, 2009, Intervenors shall file an amended complaint consistent with the Court's May 1, 2009 Memorandum Opinion on Motions to Dismiss Intervenors' Complaint.

Intervenors shall file an amended complaint consistent with this Memorandum Opinion.

The Court will issue a separate order.

SIGNED **May 1, 2009.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

17